ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.

---

In the matter of WILLIAM AND ANTHONY STREETS IN THE CITY OF NEW-YORK.

On a motion to confirm the report of commissioners of estimate and assessment relative to the laying out, &c. of streets in the city of New-York, the policy or expediency of the contemplated improvement will not be considered. Whether the determination of the corporation in this respect can in any way be reviewed, is matter of doubt. The court, however, will send back the report, where it clearly appears that the amount of benefit to owners of property in the vicinity of the contemplated improvement is not equal to the amount of damage assessed to be paid to other owners.

Nor have the commissioners of estimate and assessment the right to inquire into the policy or expediency of the measure; nor have they any discretion to exercise in respect to the discontinuing of the proceedings.

It is not necessary after a report has been re-considered and corrected by the commissioners, to give a second notice of the deposit of the report. If new parties have been brought in, they, it seems, should have personal notice so as to enable them to state their objections, if any exist; if they have not had such notice, the report will be remitted.

Nor is it necessary in a report to specify in separate columns, the benefit and the damage estimated and assessed to the same individual; it is enough to state the benefit over and above the damage.

The expense of the contemplated improvement may be added to the amount of damage to be paid by those benefitted, with the exception made in the

statute, of one third of the value of buildings to be removed which must be charged to the corporation.

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.

The commissioners in making up their judgment as to the value of land taken for a street, or as to the probable influence of the contemplated improvement upon adjacent land, are required to view the premises; they may cause estimates to be made and receive the opinions of others, and when they act upon such estimates and opinions without exercising their own judgment, they should require the same to be verified by oath; but when they ultimately exercise their own judgment, they may make inquiries and obtain information from others without putting them under oath. Their report is not considered as the testimony of three witnesses to be over-balanced by the testimony of a greater number of witnesses; nor as the adjudication of a tribunal upon evidence adduced before them and therefore subject to review; but receives the consideration due to the result of the labors of men selected for their intelligence, integrity and peculiar qualifications to discharge the duties of their appointment, who after gathering information from every possible source, have formed and pronounced their judgment. Under these circumstances a report of commissioners is never sent back for correction on the mere ground that the amount of damage is estimated too low, or the amount of benefit assessed too high, whatever may be the number of witnesses who differ in their estimates from the commissioners, unless facts and not the mere opinions of witnesses are produced, demonstrably showing that the commissioners have fallen into an error.

The mere opinions of witnesses as to value, are not entitled to much consideration.

On a motion for confirmation, evidence against the report will not be received, unless it has been previously submitted to the commissioners: the rule in respect to evidence to sustain the report is different.

The commissioners of estimate and assessment in the laying out, &c. of streets in the city of New-York, in making their estimate and assessment of loss and damage are bound to take into consideration all the covenants and conditions in a lease of land required for the contemplated improvement, when such land is held for a term of years under lease; and consequently if there be a covenant for renewal of the term, and such renewal at the rent reserved will add to the value of the interest of the tenant in the land, it is their duty to award such value in addition to the present value of the term to the tenant, and not to the landlord; the latter being entitled only to the value of the reversion after the expiration of the time which would have been embraced in the renewed lease had the same been executed.

So on the other hand if there be covenants and stipulations in the lease beneficial to the landlord, they must in like manner be taken into consideration.

Where a widow is entitled to dower in land required for a street, and the fact is known to the commissioners, it is their duty to award to her in her own name, the value of her life-estate in the premises; it is erroneous in such case to award the damage to the estate of her late husband.

The commissioners, however, are not bound to pass upon conflicting claims of title, when they depend upon controverted facts or difficult questions of law, but may in such cases report without specifying the names or the es-

ALBANY,         tates or interests of the owners, and generally say that the land belongs to
May, 1839       unknown owners.

In the matter   Where land is assessed as benefitted, and there is doubt as to the owners, it
of William and     will not affect the report that the land is returned as belonging to the estate
Anthony-sts.       of the persons last in possession ; it seems it would be otherwise where the
                   report awards damage for the land taken.

Where the owner has the unrestricted power of alienation, and the property
    may be converted by him to any use whatever at his volition, the present
    use and the purpose as to future enjoyment cannot be regarded in estimating
    damage or benefit in reference to the opening of streets—the only standard
    in such case is the market value of the property taken or benefitted.

AT the last March special term, *R. Emmet,* counsel for
the corporation, moved the confirmation of the report of the
commissioners of estimate and assessment in the case of
*William-street.* This street is *widened* from Maiden-lane to
Frankfort-street, and is *extended* from Frankfort to Chatham-
street.

*W. S. Johnson,* on behalf of many land owners affected
by the improvement, was also heard in support of the motion
for confirmation.

*R. Bogardus, J. B. Scoles, Mr. Scidmore & C. O'Connor,*
were heard on behalf of twenty-seven persons who object to
the report.

*R. Emmet,* on a subsequent day, also moved for the con-
firmation of the report of the commissioners of estimate and
assessment in the case of Anthony-street. This street is
*widened* from Hudson to Orange-street, and *extended* from
Orange to Chatham street.

*B. Drake, J. McKown, J. McKeon, W. Inglis, J. B. Scoles,
R. Bogardus, E. L. B. Brooks, C. O'Connor & M. Hoffman,*
were heard on behalf of twenty-eight individuals who object
to the report.

The questions discussed on the argument of those motions,
and the facts upon which they arose, are sufficiently stated in
the opinion delivered :

*By the Court,* BRONSON, J. The course of the argument in these two cases renders it proper to say, that whether the common council has too much power in relation to opening and improving streets, and whether the trust has been abused, are questions which belong to the legislature and the people of the city of New-York—not to this court. The power of determining when and what improvements of this kind shall be undertaken, has been confided by law to the common council ; and if its decision can ever be directly reviewed by this court, it certainly cannot be done on a motion for the confirmation of the commissioners' report. Indirectly or incidentally, it may sometimes be our duty to inquire whether the corporation has acted upon sufficient consideration. If it appear that the substantial benefits to the persons assessed are not, at the least, equal to all the damage which others will sustain, it will be the duty of the court to refuse a confirmation and send back the report, although the effect may be to postpone the improvement, or defeat it altogether. *Fourth Avenue,* 3 Wendell, 452. *Albany street,* 11 id. 150. Beyond this we have nothing to do with the policy or expediency of the measure. It is commenced by the corporation, and, down to the time of the confirmation of the report, with that body rests whatever there may be of responsibility in continuing the proceeding. *Canal-street,* 11 Wendell, 154.

So also the commissioners of estimate and assessment have nothing to do with the policy or expediency of the measure ; nor does it rest with them to say when the proceeding shall be discontinued. Their duty consists in ascertaining and reporting what will be the effect of the proposed improvement upon the several land owners within its influence. They are to inquire who will suffer " loss and damage," and who will derive " benefit and advantage ; " and to make such an estimate and assessment as will secure just compensation to the one, and subject the other to nothing more than a reasonable burden. If the commissioners have done this, no one has a right to complain that they have not done more.

ALBANY,
May, 1839.

In the matter of William and Anthony-sts.

VOL. XIX. 86

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.

II. It is objected that a new notice should have been given after the commissioners had reconsidered and corrected their estimate and assessment. 2 R. L. 417, § 182. It has not been the practice to give a second notice, and I think it is not required by the statute. *Patterson* v. *The Corp. of N. York*, 3 Paige, 114. If the commissioners in reviewing their report had made new parties, by assessing persons for benefit who were not before assessed, and had not given them notice of the proceeding, we should probably send back the report for the purpose of giving such new parties the opportunity of being heard before the commissioners. But that is not this case. All of the objectors were named in the original report, and have already been heard before the commissioners. So far as they are concerned, it would be idle to send back the report. This is a mere question of regularity ; and as to that I have already said, that only one notice is required by the statute.

III. Where the same individual will both suffer damage and derive a benefit from the improvement, the commissioners are not required to state the amount of damage and benefit separately, but only to estimate and report the " excess and surplus" of the one over the other. § 178. That course has been pursued in these cases.

IV. The aggregate of assessments exceeds the whole amount allowed for damages, by a sum which will pay the charges and expenses of the commissioners. This does not lay the foundation for a valid objection to the report. The legislature evidently intended that the whole expense of the improvement should be charged on the land owners benefited by it, § 185, 189, with the single exception, that one third of the value of any building which it may be necessary to remove, may be charged on the corporation. § 178. But although this is not, in itself, a valid objection to the report, no one can be rightfully assessed, for any purpose, beyond the " benefit and advantage" which he will derive from the improvement. Whether any one has just cause of complaint upon that ground will be considered hereafter.

V. Where the same individual owns (what are usually called) several lots of land lying in one body, the commissioners are not required to make a separate estimate or assessment for each lot, but may include the whole in one valuation and description. Although "lots" are mentioned in the statute, the language generally is, "lands, tenements, hereditaments and premises."

Joseph and Henry Hart are the assignees of John Field, who is the lessee of Peter Lorillard, of three lots on Chatham-street, for the term of five years from the first of August, 1835, at the annual rent of $900, with a covenant by the lessor for two renewals of the lease—the one for the term of five, and the other for the term of six years, at a rent which shall be equal to five per cent on the appraised value of the property, with a proviso that the rent shall not be less than $800 per annum. A part of these lots will be taken for the extension of William-street. The commissioners have only allowed damages to the assignees in reference to the original term, without at all regarding the covenant for two renewals of the lease. All the residue of the damage has been allowed to the landlord. In this I think the commissioners erred. The corporation is authorized to take lands for improvements of this kind, on making "compensation and recompense" to "the parties and persons" who will suffer loss and damage, § 177; and the commissioners are to make "a just and equitable estimate and assessment of the loss and damage, if any, over and above the benefit and advantage to the respective owners, *lessees, parties and persons* respectively, entitled unto, or *interested* in the lands, § 178. This provision extends as well to the tenant for a term of years as to the owner of the reversion; and I do not see how there can be a just and equitable estimate of the loss and damage of the tenant, without taking into consideration all the covenants and conditions in the lease which affect his beneficial interest in the land. It involves an inquiry into the annual value of the property, the amount of the rent reserved, the duration of the term, and all those stipulations, whether by way of covenant or con-

*Margin note:*
ALBANY,
May, 1839.

In the matter of William and Anthony-sts.

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.

dition, which go either to enlarge or qualify the interest of the tenant.

For the purpose of illustration, we will take a case in which the whole of the property is required for the contemplated improvement. The value of the land is the measure of damages. If the ownership of the property is divided between a landlord and his tenant, each may sustain a part of the loss, and will be entitled to a portion of the compensation and recompense. If the rent reserved is equal to the full annual value of the property and there is nothing else to affect the question, the landlord will be entitled to all the damages. The tenant loses nothing, and is, consequently, entitled to nothing—or at most only to a nominal sum. But if the rent is less than the annual value, the tenant sustains a portion of the loss. The duration of the term then becomes an important consideration; for the longer it may continue the greater is the damage done to the tenant, while the loss to the landlord, as owner of the fee, is diminished to the same extent.

The value of the term, whether long or short, may be affected by other stipulations in the contract than those directly relating to the rent. If, for example, the tenant is to pay taxes, the amount of that burden constitutes a part of the price which he pays for the enjoyment of the property. So if the tenant agree to make erections or other improvements on the land which will endure beyond the term, the value of his interest in the property is plainly diminished, and that of the landlord increased by the covenant. In the case before us the tenant has covenanted to pay not only ordinary, but all extraordinary taxes, duties and assessments on the property during the term. He has thus charged himself with such burdens as may be imposed for opening, regulating and paving streets and public places, and making other improvements which will enhance the value of the reversion. It is evident this covenant must affect the relative interests of the parties in the property. The value of the term is diminished, and that of the reversion is increased by the covenant.

Upon the same principle the stipulations of the landlord ALBANY, May, 1839.
must affect the relative interests of the parties.    If the lease
for the original term is beneficial to the tenant, the unqualified In the matter of William and Anthony-sts.
right of renewal for a further period on the same terms, must
increase the value of the tenant's interest in the property,
while it diminishes the value of the reversion.    In this case
the rent on the renewals of the lease may be either more or
less than that reserved for the original term : but it seemed
to be conceded on the argument that the renewals on the
specified terms would be beneficial to the tenant.

It is true that the covenant for a renewal does not create
a legal estate in the land, and in a court of law it can only
be enforced by an action to recover damages.    But a court
of equity regards it as an estate, and will decree a specific
performance of the contract.    The statute provides for *all
parties and persons interested* in the lands, and requires a
just and *equitable* estimate of their loss and damage : and I
cannot doubt that it extends to the equitable interest created
by the covenant for a renewal.    I will not say that the com-
missioners must take notice of every equity that may exist,
nor that they are at liberty to do so.    It is enough for this
case that the tenant has a legal estate in the land, which may
be more valuable in consequence of the covenant for a
renewal of the lease.

The opinion that the legislature intended the commission-
ers should take into consideration all the stipulations in the
lease, is confirmed by the 181st section of the statute.    It
provides that where the whole of any lot shall be taken, " all
the covenants, contracts and engagements between landlord
and tenant" touching the property, shall, upon the confirma-
tion of the report, " cease and determine, and be absolutely
discharged ;" and that where only a part of any lot is taken
the contract shall cease *pro tanto*.    We cannot suppose
that the legislature would nullify the covenants between
landlord and tenant, without providing for a just and equitable
adjustment of their respective interests under the contract in
the award of damages.

In this case only a part of the land has been taken for
the improvement, and as to that, the lease, with all its cove-

ALBANY,
May, 1839.

In the matter
of William and
Anthony.sts.

nants and conditions, is at an end. But in relation to the residue of the property, the contract still remains in full force. There will be an apportionment of the rent in the ratio which the value of the land remaining bears to the value of the part which has been taken, *Gillespie* v. *Thomas*, 15 Wendell, 364; and all the covenants and conditions in the lease will apply to the residue of the property, and the amount of rent chargeable upon it according to the apportionment. These consequences which will result from the proposed improvement should be taken into consideration by the commissioners, and the whole amount of compensation and recompense for the property' taken should be divided between landlord and tenant in such a manner as will do equal justice to both parties.

Whether upon the principles I have laid down, a sufficient allowance has been made to the assignees of the lease, is a question which I have not considered. As it was admitted on the argument, that the commissioners had not acted upon the rule of regarding all the covenants and conditions in the lease, the report must be referred back for revisal and correction.

VII. Thomas Mooney died seised of a lot of land at the corner of Cross and Orange-streets, the whole of which will be taken for extending Anthony-street. He made his will, disposing of all his real estate, and made a particular provision for his wife, on condition that she relinquish her right of dower. Maria Mooney, the widow, refused the provision made by the will, and elected to take her dower, and was in the receipt of one-third of the rents and profits of the real estate at the time the estimate and assessment was made. The commissioners awarded the damages to the "estate of Thomas Mooney." The widow in due time made her objection to the report, and insisted that a just proportion of the damage should be awarded to her by name; but the commissioners disregarded the objection.

The statute provides, that "where the owners and parties interested, or their respective estates and interests are unknown, or not fully known to the commissioners," it shall be sufficient to set forth in the report "in general terms,"

the sums to be paid "to or by the owners generally" of the

lands, "in respect of the whole estate and interest of whomsoever may be entitled unto or interested in the said lands, without specifying the names, or the estates or interest of such owners, or of any or either of them." § 178. In cases falling within this provision, the money awarded for damages is paid into this court, for the benefit of the parties who may be legally entitled to it. § 184. The provision is broad enough to include cases where, although the names of the owners may be known to the commissioners, the quantum of their respective interests has not been ascertained; and it may relieve the commissioners from the necessity of passing upon conflicting claims of title, although some of the parties should require them to do so. It is more fit that such questions should be settled by the court, whose business it is to declare the law, and where a feigned issue may be awarded for the purpose of settling controverted questions of fact.

But in this case, although questions of some difficulty may possibly arise between the executors of Thomas Mooney and the persons interested in his real estate as heirs or devisees, there was no question in relation to the right of Mrs. Mooney. The name of the owner and her estate and interest in the land were known to the commissioners. The value of her life estate in one-third of the lot might have been ascertained without difficulty. A portion of the whole amount of damages would then have been awarded to her by name, and the money would have been paid by the corporation, § 173, without subjecting her to the delay and expense of coming to this court to obtain her share of the damages. The statute in express terms requires the commissioners to "set forth the names of the respective owners" of the land, "as far forth as the same shall be ascertained by them." Here the name of one of the owners, and the extent of her interest were ascertained. Whoever might be entitled to the inheritance, her right to a life estate in one-third of the lot was unquestioned. I think the commissioners erred in disregarding her objection, and the report must consequently go back for revisal and correction.

ALBANY,
May, 1839.
In the matter
of William and
Anthony-sts.

VIII. In the case of Anthony-street, certain lots which are assessed for benefit and advantage, are mentioned in the report as belonging to the "estate of Jacob Harsen." John O. Fay and Catherine, his wife, filed objections with the commissioners; the first of which was, that the property belonged to the estate of Catharine Harsen, who was the wife of Jacob Harsen, and that the commissioners should have so reported. The validity of this objection depended on certain allegations which they set up in relation to the source of the title, and involved the question whether a deed executed and acknowledged by husband and wife, and recorded in 1790, under which, as was alleged, Jacob Harsen derived his title, was so acknowledged as to make it a valid conveyance by the wife. If this question should be decideded against them, the objectors then insisted that the commissioners should pass upon the validity of certain trusts and devises in the will of Jacob Harsen, which they alleged were void. If this question should also be decided against the objectors, they then insisted that the commissioners should set forth in their report the particular interests in the property, created by the will of Jacob Harsen, supposing it valid. The commissioners did not alter their report, and the objectors now oppose its confirmation.

It is not, I think, the duty of the commissioners to pass upon conflicting claims of title, where they depend either upon strongly controverted facts, or difficult questions of law. Such matters should be settled by courts and juries. Whether the acknowledgment of the deed of 1790 by the *feme covert* was sufficient to pass her estate, is a question of considerable difficulty; and whether a trust to receive and *pay over* the rents and profits of land can be upheld, is a point upon which the highest judicial officers in the state have arrived at different conclusions, and is still open for adjudication. The legislature did not intend that such questions should be settled by the commissioners; and it was for this, among other reasons, provided, that "where the owners and parties interested, or their respective estates and interests are unknown, or not fully known to the com-

missioners," they may report " without specifying the names ALBANY, May, 1839. or the estates or interests of such owners."  § 178.

In the matter of William and Anthony-sts.

The form in which this assessment is made can work no serious injury to any one.  The sum assessed is a lien and charge on the land, § 186, and will only affect the true owners, whoever they may be.  The form adopted can create no personal liability which would not have existed had the commissioners pursued the more usual course of reporting that the lots belonged to " unknown owners."

Where an allowance is made for damages, it is more important that the owner should be named in the report, or at least, that he should not be misnamed.  If the damages are awarded to the wrong person, he may receive the money from the corporation ; and if unable to refund it, the rightful owner may suffer irreparable injury.  § 173, 174.  No such consequence can result in this case, and the report, so far as these parties are concerned, should not be disturbed.

IX.  The Society of the New-York Hospital owns the block of ground bounded by Broadway, Duane, Church and Anthony streets, except a part of the front on Broadway, which belongs to others.  A strip of the society's land, 25 feet wide and 365 feet long, will be taken for the widening of Anthony street, and the commissioners have allowed the society for loss and damage over and above benefit and advantage, the sum of $1953.  This sum will rebuild the fence on the new line of Anthony-street, and cover all the damage which the society will sustain, if the loss of the land be not in itself an injury.

The society owns the fee of the land, and has the power of alienation.  The only thing peculiar to this case is the use to which the property is now applied, and the desire of the society to continue the same mode of enjoyment for the future.

This public hospital or infirmary is well described in the charter granted to the society by Governor Dunmore in 1771, as an institution " calculated for relieving the diseases of the indigent, and preserving the lives of many useful members of the community ; " and it has since been recognized by the legislature as " an institution of great public utility."  A large

ALBANY,
May, 1839.

In the matter of William and Anthony-sts.

extent of grounds beyond what is required for the buildings is deemed important for the purpose of securing a free circulation of air, and affording a suitable promenade for invalids. It is not an hospital for incurables, the location of which would be comparatively unimportant; but, in the language of the governors, " it is designed to afford relief in those cases of daily occurrence in the centre of business, where the removal of the subject to any considerable distance, and the delay necessarily attending upon such removal, involve consequences always injurious, and often fatal." They are of opinion that no other "suitable location could be procured within the compactly built part of the city at any sacrifice of funds."

I am fully satisfied that the hospital is now in the right place, and that it would be very difficult, if not impossible to find another site combining all the advantages of the present location. But the contemplated improvement does not involve the necessity of a removal, nor do I perceive that it can work any very serious injury to the society. The widening of the street will only take 25 feet from the side of a lot 440 feet wide, without either touching the present buildings, or interfering with the site of a new building which the society contemplate erecting. As the opening will extend beyond these grounds, it cannot impede, but will tend to improve, the free circulation of air at the hospital. The promenade will be diminished a little, and carts and carriages may pass a few feet nearer to the hospital buildings than they do at present. But these are not matters of very great importance.

As a general rule in making these estimates and assessments, the present use of the property, and the purpose of the owner in relation to its future enjoyment, must be laid out of view. The only safe and practical course—the one which will do equal justice to all parties, is to consider what will be the influence of the proposed improvement on the market value of the property. What is it now fairly worth in the market, and what will be its value after the improvement is made? *Furman-street*, 17 Wendell, 668. In the case of *churches*, and lands which can only be used for a

.cemetery, a different rule has been laid down. *Matter of the* ALBANY,
*Mayor, &c.*, 11 Johns. R. 77. *Albany-street*, 11 Wendell, May, 1839.
150. But it should be remarked in relation to these cases, In the matter
that they proceed on the ground that the owner cannot apply of William and Anthony-sts.
the property to any new or different use. Where the
owner has the unrestricted power of alienation, and the
property may be converted to any new use at his pleasure,
it is difficult to see upon what principle an exception can be
made to the rule of regarding only the market value. After
the owner has escaped, what would otherwise be a just
burden, on the ground that he does not intend to use the
property in a way which will make the improvement bene-
ficial, he may change his mind—throw the property into the
market, and realise advantages for which others have been
made to pay.

If we regard the market value of the property, it is
impossible to say that any injustice has been done by the
commissioners. According to the representation of the
governors of the hospital and the affidavits which they have
submitted, the land taken for widening the street, is worth
from twenty to twenty-five thousand dollars. But none of the
witnesses either say or intimate an opinion, that the value of
the residue of the property, *for general purposes*, will not be
increased by the improvement to a sum fully equal to the
value of the part taken. All the affidavits are nearly in the
same form, and each of the witnesses expresses the belief,
that the contemplated improvement will not make the
remaining property " more valuable *to the said society, or for
any purposes of said institution* than the same now is." If
we disregard the particular use to which the property is
applied, the proofs submitted furnish no ground whatever for
saying, that the sum awarded by the commissioners is less
than the damages which will be sustained.

But if we depart from the rule of regarding only the
market value of the property, and take into consideration
the particular mode of enjoyment, I do not perceive that it
can alter the result. We have already seen, that the
contemplated improvement does not involve the necessity of
removing the hospital, and that it can work no material injury

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.
to the property for the purposes to which it is now applied. None of the witnesses go further than to express the belief, that "the greater proximity of the street will render the said remaining ground less useful for the purposes of the said institution, and less valuable to said society." Although the street (the only thing complained of) will be nearer in consequence of the improvement than it was before, it will still be more than eighty feet distant from the present buildings, and about fifteen feet from the one in contemplation. Whatever injury may result from "the greater proximity of the street, must, I think, be fully compensated by the contemplated opening each way beyond the hospital grounds. The witnesses only express the opinion that the property will be rendered "less valuable" to the society, without saying to what amount. Had they believed that there would be any considerable diminution of value, it is reasonable to suppose that a sum would have been mentioned, especially as the witnesses, in giving their opinion of the value of the property for general purposes, do specify the amount.

There is nothing then in the proofs submitted which will authorize us to say that the commissioners have erred. The result is the same whether we regard the mode of enjoyment, or look only to the market value of the property.

The error into which the officers of the institution have fallen, consists in adopting different rules for making estimates for benefit and for damage. In the one case they take into consideration the use to which the property is applied, in the other they disregard it, and give the market value. They will derive no benefit, because the property which remains is appropriated to a particular use ; but they will sustain damage, because the property taken is valuable for general purposes. This will not do. The manner of enjoyment must either be disregarded altogether, or it must be taken into consideration throughout. *Albany-street*, 11 Wendell, 150.

While I commend the diligence and zeal with which the governors of the hospital have defended this noble charity against the possibility of harm, I am unable to say that the

commissioners have fallen into any error in making the as-sessment.

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.

X. It is objected on behalf of several land owners that the improvement of Anthony street will render necessary a new regulation of some of the adjacent streets, and that the commissioners have not taken this matter into consideration in making their estimate and assessment. 4 Laws 172, a. It does not appear from the report that the grade or regulation of other streets will be affected by this improvement; but I learn from one of the commissioners that such is the fact, and that they did procure profiles and plans showing the intended regulation of the adjacent streets, and took the same into consideration in making their estimate and assessment. There has been no error in point of fact, and as none appears on the face of the report, the objection must be overruled.

XI. Most of the questions which remain, relate to the amount which the commissioners have awarded to each of the general objectors for damages, or assessed upon him for benefits. The cases may be divided into three classes: 1. Where the whole of a lot or parcel of land is taken for the improvement. These present nothing but the simple question of valuation, and the only enquiry is, whether enough has been allowed to the owner for his loss and damage. 2. Where no property has been taken, but the owner of adjacent property has been assessed for benefit and advantage; and the complaint is, either that he should not have been assessed at all, or not so much. 3. Where a part of the property of an individual has been taken, leaving a residue. In these cases the commissioners estimate the loss and damage for the part taken, and the benefit and advantage for that which remains, and, if unequal, report a balance either one way or the other; and the owner complaining that the balance has been placed on the wrong side of the account, or that it is either too much or not enough. The third class is a compound of the two first. The whole may be resolved into two general questions—1. whether the commissioners have put a just valuation upon property taken; and 2. whether they have formed a just estimate of the influence

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.
which the improvement will have upon the value of other property.

All the questions relating to the principle upon which the commissioners proceeded in making their several estimates and assessments, have received a separate consideration. We are now brought to the inquiry whether the commissioners have erred in judgment upon the mere questions of value, or concerning the probable influence of the improvements upon value. And here, most of the several objectors have produced affidavits, in which the deponents express opinions differing, more or less widely, from the results at which the commissioners arrived; and we are asked to send back the reports on the ground that they are against the weight of evidence.

Courts seldom set aside the verdict of a jury on the sole ground that they may think it against the weight of evidence. And yet there is much less difficulty in such a review than there is in the case under consideration. Jurors do not act upon particular facts within their own knowledge, but upon written documents and the testimony of witnesses submitted to their consideration. The evidence upon which they form conclusions may be put upon paper, and submitted to the court for consideration. But it is not so, or, at most, only to a very limited extent, in relation to the proceedings of these commissioners. They are selected not only with reference to their integrity and general capacity for business, but on account of the knowledge which they are supposed to possess concerning the particular duty which they are appointed to discharge. Such information as they have in relation to the value of the property taken, and the probable effect of the improvement upon other property in the same neighborhood—in whatever way the information may have been obtained—they are at liberty to use. The very first thing which is required of them by law, after taking the oath of office, is to view the premises affected by the improvement, § 178. They are thus to acquire information, and that too of the most important character, which there are no means of bringing before this court. And beyond this, I entertain no doubt that the com-

missioners may take the opinions of others, in whose integ-
rity and judgment they have confidence, without swearing
them as witnesses.  They may converse with all classes of
men concerning the business in hand, and collect informa-
tion in all the ways which a prudent man usually takes to
satisfy his own mind concerning matters of the like kind,
where his own interests are involved in the inquiry.  The
commissioners must exercise their own judgment at the last,
but they may first seek light from other minds, the better to
enable themselves to arrive at just conclusions.  When the
original jurisdiction is exercised in this manner, it is impos-
sible that there should be any thing like a regular judicial
review.

We cannot regard the commissioners as witnesses mere-
ly, and then suffer their judgment to be balanced by the
opinions expressed in three opposing affidavits, and to be
outweighed when a fourth is added.  For aught that we can
know, the judgment expressed by the commissioners upon
questions of value, may combine the opinions of a hundred
men who are in all respects as well qualified to form just
conclusions as those who make opposing affidavits.

In settling questions of value, the commissioners do not sit
as a court and jury, and decide upon the evidence of witnesses
examined before them.  Nothing of this kind was contem-
plated by the act of 1813, nor can it be justly inferred from
the act of 1818, which authorized them to administer oaths.
Stat. of 1818, p. 196, § 2.  Estimates from mechanics and
builders may become important in the discharge of the duties
of the commissioners, and in these and other cases they may
require the sanction of an oath to the estimates which they
receive.  If, in any case, they make the opinions of others
the basis of action without exercising their own judgment,
those opinions should be given upon oath.  But when they
only seek information for the purpose of enlightening their
own judgment, they may obtain it in any of the ways in which
men usually acquire knowledge.  They need not, and in
point of practice they do not, sit as a court.  If in any case
they take the testimony of witnesses in relation to value, it
is but an item in the account, which may go to qualify, but

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.

cannot control their own opinions.  How then is it possible that we can disturb the report upon mere questions of value, on the single ground that five, ten, or even twenty reputable men have sworn to opinions at variance with the judgment of the commissioners ?

A review was given to this court for the purpose of seeing that the commissioners exercise their authority in the forms prescribed by law, and for the correction of any error in the *principle* upon which they have proceeded in making their awards.  After what has been done in other cases, I will not say that we cannot go beyond this, and examine questions of value.  But there must be something more than the opinions of witnesses against the judgment of the commissioners.  We must have facts.  There must be something like demonstration that the commissioners have fallen into error.

XII.  The statute requires that all objections to the report should be laid before the commissioners for their consideration before the report is presented to this court for confirmation, § 182; and on this ground it has been long settled that no evidence *against* the report will be received here, which was not laid before the commissioners in proper time. *Harmon-street*, 16 Johns. R. 231.  But the statute makes no such requirement in relation to evidence *to sustain* the report, and it has been the constant practice to receive affidavits for that purpose which were not before the commissioners at the time they made their final awards.  If this was strictly a review in the nature of an appeal or writ of error, it is quite clear that we could not receive such affidavits. But the proceeding is anomalous.  We have already seen that the commissioners do not sit as a court and decide upon the testimony of witnesses.  They view the premises affected by the improvement, and collect information concerning value by other means which are wholly extra-judicial.  From the nature of the case, questions of this kind cannot be presented to us in the same form in which they appeared before the commissioners ; and there is no way in which we can be better prepared to review their decisions, than by receiving affidavits to uphold the report, although they were

not laid before the commissioners. If such proofs are rejected, we must either say that questions of value cannot be re-examined at all, or else we must sit in review with the knowledge of only one side of the case as it appeared before the original jurisdiction.

If the question was now presented for the first time, I should be of opinion that we could only re-examine questions of *law*, and set the commissioners right when they have erred in the principles upon which they have proceeded. But questions of *fact* relating to value have been entertained; and then, as the best practical means for arrriving at just conclusions, affidavits to sustain the report have been received in answer to those presented by the objectors. This practice, although it may not have been sanctioned by any direct adjudication, has long prevailed, and I think we should not now depart from it.

In receiving these affidavits, we do not intend to say that they can justly be regarded as of much importance. Like most of the affidavits on the part of the objectors, they have been taken *ex parte*, and contain little more than the *opinions* of witnesses concerning the value of property taken, and the probable influence of the improvement upon property which has been assessed for benefits. Such evidence, from which ever side it comes, is of an unsatisfactory character, and cannot weigh much either for or against the report of the commissioners. These cases furnish several illustrations of the justice of this remark. I will only mention two. In one instance, where the corner of a lot has been taken for the opening of Anthony-street, and the party obtains a new front, some of the witnesses are of opinion that the owner will be benefited nearly two thousand dollars, while other witnesses are of opinion that he will be injured to the extent of ten thousand dollars. In another case, presenting nothing but the simple question of value—the whole of the property having been taken for widening Anthony-street— the witnesses have expressed different opinions, ranging from forty thousand to one hundred thousand dollars. Such widely varying estimates, prove that the opinion of witnesses taken in the form of *ex parte* affidavits, cannot be regarded as

ALBANY,
May, 1839.

In the matter
of William and
Anthony-sts.

a very satisfactory guide in reviewing the decisions of the commmissioners.

On this part of the case it is only necessary to add, that I have carefully examined the objections and proofs relating to the question of value, in all the various forms in which that question has been presented, and am of opinion that there is no sufficient ground for sending back either of these reports. Looking only at the papers before us, I might, as to some of the objectors, differ with the commissioners both in relation to awards of damages and assessments for benefit. But I find no case of such a decided character as will authorize us to say that the commissioners, with their better means of arriving at just conclusions, have failed to render substantial justice to all parties.

For reasons already assigned, the report in relation to Anthony-street, so far as relates to the case of Maria Mooney, must go back to the same commissioners for the purpose of awarding to her by name, the value of her life estate in one-third of the property. The sum allowed to the "estate of Thomas Mooney" must of course be diminished by the amount which may be allowed to the widow for her right of dower.

When the report is again before the commissioners, it may be so corrected as to make it conform to the facts, by stating that the profiles and plans of the adjacent streets were obtained and considered by the commissioners in making their estimate and assessment.

The report in relation to William-street must be referred back to the same commissioners for the purpose of reconsidering the relative interests of Peter Lorillard, as the owner of the fee, and Joseph and Henry Hart, as the assignees of the lessee of the property.

In relation to other parties, both of the reports are in all respects confirmed.

Ordered accordingly.