# JUNE TERM, 1871. 157

State, Protestant Foster Home Society, pros., v. Mayor, &c., of Newark.

## THE STATE, THE PROTESTANT FOSTER HOME SOCIETY OF THE CITY OF NEWARK, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

By the fifth section of the society's charter, it is enacted that the property of the society "shall not be subject to taxes or assessments." The following section, providing that the legislature may, at any time, amend, modify, or repeal the charter, as they shall think proper. *Held*, that this amounts to a contract, which, until rescinded in the manner provided for in the charter, will exempt the society from all such taxation, whether for state, county, township, or municipal purposes, as may be imposed under the general tax laws of the state. But that the word "taxes," in the exempting clause of the charter, must, in the absence of any clear indication to the contrary, be understood to refer exclusively to the ordinary public taxes; and that the word "assessments" has reference to burdens of the same general character as those expressed by the word "taxes," and was not intended to include local assessments for municipal purposes.

*Held further*, that in making such assessments the present use of the property and the purpose of the owner, in relation to its future enjoyment, must, as a general rule, be laid out of view, the only safe and practical course being to consider what will be the influence of the proposed improvement in the market value of the property.

---

On *certiorari* to set aside assessments.

Argued at November Term, 1870, before Justices WOOD-HULL, DEPUE, and VAN SYCKEL.

For plaintiffs, *H. Young* and *F. T. Frelinghuysen.*

For defendants, *N. Perry, Jr.*

The following state of the case was agreed to by the counsel of the parties :

1. This cause is brought to set aside two assessments, for benefits, made against the property of the Foster Home Society of the city of Newark—one for opening Summer avenue, and the other for grading, curbing, and flagging Second avenue, in the city of Newark.

2. That for the costs and expenses of grading, curbing, and flagging Second avenue, in said city, assessments were made by the city surveyor against the property of the said Protestant Foster Home Society, on the line of Second avenue, designated as lots Nos. 1, 2, and 3, on city surveyor's map, annexed to the returns to this *certiorari*, as follows:

Lot No. 1, . . . . . . $3748 01

" " 2, . . . . . . 453 00

" " 3, . . . . . . 3934 56

3. That the commissioners appointed by the common council of the city of Newark, to assess the costs, damages, and expenses of opening Summer avenue, in said city, made assessments in accordance with the supplement to the charter of said city, approved April 6th, 1868, against the property of the said Protestant Foster Home Society, on the line of Summer avenue, designated as lots 65 and 67, on commissioners' map annexed to the return to this *certiorari*, as follows:

Lot No. 65, . . . . . . $1370 25

" " 67, . . . . . . 1381 00

4. That these assessments were made against said Protestant Foster Home Society in like proportion and as against other property on the line of said improvements.

5. That the said assessments for grading, curbing, and flagging Second avenue and opening Summer avenue, remaining unpaid, the property of the Protestant Foster Home Society was advertised for sale to pay said assessments April 15th, 1870, in accordance with the provisions of the charter of said city of Newark.

6. That the Protestant Foster Home Society of the city of Newark was incorporated February 28th, 1849, and by section five of their charter, it is enacted that the property of said society shall not be subject to taxes or assessments. It is agreed that the charter of the Protestant Foster Home Society of the city of Newark, and the charter and ordinances of the city of Newark, may be used in the argument of this cause.

7. That the Protestant Foster Home Society of the city of

Newark has, since its organization, by the use and products of its said property, as hereinafter set forth, and by individual contributions made from time to time, been taking care of, supporting, and educating children of the city of Newark, exclusively, some of whom were taken from that class and in that condition as otherwise would have become a charge as paupers upon the said city.

8. That the property of the Protestant Foster Home Society, upon which these assessments have been made as aforesaid, was conveyed to said society in two several tracts. The first tract was conveyed August 1st, 1848, by Isaac Meeker and wife, to William Pennington and others, trustees of the said Protestant Foster Home Society, and after incorporation, the same property, containing twelve and a half acres, was conveyed by said William Pennington and others, trustees as aforesaid, to the said Protestant Foster Home Society of the city of Newark. The second tract was conveyed March 23d, 1853, by Jesse Baldwin and wife, to the said Protestant Foster Home Society. The said last-mentioned tract contains about three acres, and is situate on the corner of Belleville avenue and Second avenue. Of this property, the frontage on Belleville avenue, to the depth of about one hundred feet, is occupied by the home and garden, the balance being unimproved land.

Up to the time of opening Second avenue, all the said property was used for pasturage and the raising of crops of corn and potatoes for the use of the said society. Since then, all the above-described tract has been used as aforesaid, by the said society, with the exception of the northwesterly half of lot No. 1, on city surveyor's map, which has been lying open. The contractors for grading Mount Prospect avenue and Second avenue, (see city surveyor's map,) have been, and now are, by agreement with the said Foster Home, filling in said lot to the level of said avenue, thereby rendering it at present unfit for use.

9. That this property has been subject to but one assessment prior to this, viz., an assessment for paving Belleville

State, Protestant Foster Home Society, pros., v. Mayor, &c., of Newark.

avenue, which assessment was ratified September 28th, 1868, and noticed for payment December 1st, 1868.   This assessment has never been paid by the Protestant Foster Home Society, nor enforced by the city against them, or any of the property owners, although some have paid.   The legality of the assessment for paving Belleville avenue has been *certioraried* by some of the property owners on said Belleville avenue, and is now awaiting the decision of the Court of Errors and Appeals.   To these proceedings the Foster Home was not a party.

In the book of assessments of the city of Newark, opposite the said assessment for paving Belleville avenue, is a memorandum made by the treasurer of the city of Newark, " Exempt by law."

The above is admitted for the purpose of the argument of this *certiorari*, and is to answer all the ends and purposes of a return to this writ.

October 27th, 1870.

N. PERRY, Jr.,
*City Counsel.*
HENRY YOUNG,
*Plaintiff's Att'y.*

Three reasons were assigned for setting aside the assessment:

1. Because the said proceedings are not in conformity to the directions of the charter of the city of Newark in that behalf.

2. Because said assessments upon the property of the Protestant Foster Home Society of the city of Newark, for benefits for grading Second avenue, and opening Summer avenue, in said city, are illegal.   The charter of incorporation of said Protestant Foster Home Society, approved February 28th, 1849, enacts that the property of said society shall not be subject to taxes or assessments.

3. Even if the charter of the said society did not contain the exemption above mentioned, the said assessments for

benefits were erroneously and illegally made. The property of the said society was not benefited to so large a degree by grading Second avenue and opening Summer avenue, as the property of other land-owners on the line of said streets, and should not have been assessed for benefits upon the same principle.

WOODHULL, J. This *certiorari* is brought to set aside two assessments for benefits made against the property of the Protestant Foster Home Society of the city of Newark; one for, grading, curbing, and flagging Second avenue, and the other for opening Summer avenue, in said city.

By the fifth section of the act to incorporate the said society, passed February 28th, 1849, (*Acts of* 1849, *p.* 140,) it is enacted that the property of the society "shall not be subject to taxes or assessments."

The sixth section provides that the legislature may, at any time, "amend, modify, or repeal this act, as they shall think proper."

The reason most relied on for setting aside these assessments was, that they are within the exempting clause of the fifth section of the charter, and are, therefore, illegal. The power of the legislature to grant the exemption claimed by the prosecutors in this case, and the force and effect of such exemption, when contained in a charter subject to modification or repeal at the will of the legislature, were fully considered in this court, and in the Court of Errors in the case of *The State* v. *Miller*, and may be regarded as no longer open questions in New Jersey.

Mr. Justice Elmer, in delivering the opinion of this court, which was afterwards adopted as the opinion of the Court of Errors in the same case, on affirmance of the judgment below, says: "That an act granting corporate privileges to a body of men, and expressly exempting them from taxation, becomes, when accepted, a contract which is protected by the constitution of the United States, from being impaired, is too well established by judicial decisions, by the action of the

legislature, and the acquiescence of the people, to be questioned. But the weight of authority is equally decisive, that if the act reserves a right of repeal, the company takes the charter and the contract thereby implied or expressed, subject to such alterations as the legislature may deem expedient." *State* v. *Miller*, 1 *Vroom* 368 ; 2 *Vroom* 521.

It may be assumed, then, that there is embodied in the charter of the prosecutors, a contract which, until rescinded in the manner provided for in the act, furnishes a complete protection against all such burdens or impositions as were clearly intended by the legislature under the designation of " taxes or assessments."

It may be admitted, too, that the legislative intent to exempt the society from all such taxation, whether for state, county, township, or municipal purposes, as is imposed by the general tax laws of the state, is sufficiently clear.

But can it be said that these local assessments for benefits are so clearly within the meaning of the words "taxes or assessments," as used in the charter of the prosecutors, that this court would be justified in holding that they are no more liable to such assessments for municipal purposes than they are to the burdens of ordinary taxation ?

Although an assessment for benefits is clearly an exercise of that power of taxation which is inherent in the state as a part of its sovereignty, it has been repeatedly decided that such assessments are not *taxes,* in the ordinary legislative sense of that words. In the case of *The City of Paterson* v. *The Society for Establishing Useful Manufactures,* 4 *Zab.* 385, the expenses of grading and paving a street had been assessed upon lots owned by the defendants, and such assessment was held not to be a tax within the meaning of that defendant's charter, which exempted their property from " all *taxes, charges,* and impositions under the authority of this state."

Chief Justice Green, delivering the opinion of the court in that case, says: "The taxes, charges, and impositions" specified in the charter, are manifestly those imposed for public use.

State, Protestant Foster Home Society, pros., v. Mayor, &c., of Newark.

" The design of the charter was to relieve the corporation from such burthens only," citing and adopting the language of the Supreme Court of New York in *The Matter of the Mayor of New York*, 11 *Johns. R.* 80, that " to pay for the opening of a street in a ratio to the benefit or advantage derived from it, is no burthen; it is no talliage or tax, within the meaning of the exemption, and has no claim on the public benevolence."

In the case of *The State* v. *The City of Newark*, 3 *Dutcher* 185, the exempting clause in the charter of the prosecutors was, " that no other or further tax, or imposition, shall be levied or imposed upon the said company;" and an assessment for benefits upon houses and lots of the prosecutors, " in proportion, as nearly as may be, to the advantage each was deemed to acquire," by the altering and widening of a public street in the said city, was held not to be such a tax or imposition as they were entitled to be exempted from by virtue of their charter.

Mr. Justice Elmer, in the opinion delivered by him in that case, speaking of the exemptions in the charter of the prosecutors, and other similar charters granted by the legislature of this state, remarks that " these exemptions are connected with, and partly in consideration of, provisions for the payment by the companies, of specified taxes into the state treasury, and have been held by our courts to include not only taxes imposed expressly for state purposes, but all county, township, or city taxes. To extend them beyond such taxes as are assessed as a burthen, so as to include those which are collected, upon the principle of requiring the value of benefits received to be returned, would be to disregard the obvious intention of the legislature. Taxes of the general nature of those usually laid for defraying the expenses of the government, and such only, are to come within the fair meaning of the language used."

In the case of *The Mayor and City Council of Baltimore* v. *Proprietors of Green Mount Cemetery*, 7 *Md. R.* 517, cited and approved by Chief Justice Green in *The State* v. *City of New-*

*ark,* the company's charter provided that the land appropriated as a cemetery, so long as used for that purpose, "should not be liable to any tax or public imposition whatever."

The company was, nevertheless, held not to be exempt from a paving tax for paving a street in front of its property. LeGrand, C. J., in delivering the opinion of the court in that case, says: "The words 'any tax or public imposition whatever,' most certainly are very comprehensive, and would, if strictly construed, apply to every possible form of taxation or imposition, and as a consequence, necessarily include a paving tax."

But, on the fullest consideration, we are unable to satisfy our minds that the statute in question should receive such an exposition. We think the legislature intended nothing more than to exempt the property of the prosecutors from all taxes or impositions levied or imposed for the purpose of revenue, and not to relieve it from such charges as are inseparably incident to its location in regard to other property.

Chancellor Zabriskie, delivering the opinion of the Court of Errors and Appeals, in the case of *Cook, Collector of Northampton,* v. *The State,* says: "The position that no person or corporation shall be held as exempt from taxation, one of the highest and most important of the sovereign powers of the state, unless by clear and express words, or an implication as strong and conclusive as express words, is one founded on principles that are incontrovertible, and the application of which to cases like this, is established by authorities which we cannot disregard." 4 *Vroom* 474, and cases there referred to.

In *Penn. R. R. Co.* v. *Canal Commissioners,* 21 *Penn.* 9, the language of the court is that "corporate powers can never be created by implication, nor extended by construction. No privilege is granted unless it be expressed in plain and unequivocal words, testifying the intention of the legislature in a manner too plain to be misunderstood.

" In the construction of a charter, to be in doubt is to be

resolved; and every resolution which springs from doubt is against the corporation."

An eminent jurist, speaking of statutes which confer particular exemptions from general burdens, or against common and general right, says: "The statutes which fall in this class are regarded with a jealous eye, and strictly construed." *Sedg. on Stat. and Cons. Law* 344. And again: "In analogy to the rules requiring a strict interpretation to be applied to all corporate grants, it is held that although a contract may be made exempting a party from taxation, it must be very clear and express." *Ib.* 632.

In a recent valuable treatise by Judge Cooley, of Michigan, the rule of construction applicable to all such cases, and the reason on which it rests, are thus well stated: "Equality of rights, privileges, and capacities, unquestionably should be the aim of the law; and if special privileges are granted, or special burdens or restrictions imposed in any case, it must be presumed that the legislature designed to depart as little as possible from this fundamental maxim of government.

"The state, it is to be presumed, has no favors to bestow, and designs to inflict no arbitrary deprivation of rights. Special privileges are obnoxious, and discriminations against persons or classes are still more so, and, as a rule of construction, are always to be leaned against as probably not contemplated or designed." *Cooley's Con. Lim.* 393.

It seems clear, from these authorities, that the word taxes, in the exempting clause of the prosecutor's charter, must, in the absence of any clear indication to the contrary, be understood to refer exclusively to the ordinary public taxes. And applying the same rule of construction which the courts have uniformly applied to other words in a similar connection, such as *charges, imposts, impositions, levies,* it follows that the word assessments, as it stands in the clause in question, must, if it will fairly admit of such an interpretation, be understood to have exclusive reference to burdens of the same general character as those expressed by the word *taxes.*

It was urged with much ingenuity and force on the part

of the prosecutors, that this interpretation of the word *assess-ments* involves the violation of familiar rules of construction :. 1. That which requires the words of an act or a contract to be taken in their plain and natural sense. 2. That which requires that every word shall, if possible, be made to take effect. The answer to this objection, if not already sufficiently suggested, will be found in the nature of the claim set up by the prosecutors, the strict rule of construction to be applied to it, and in the fact which a glance at our tax laws will verify. That the words taxes and assessments are not unfrequently used by the legislature as equivalent terms—so that in the clause in question the word assessments following as it does the connective "*or*," may naturally enough be understood to be used merely as an alternative expression signifying, substantially, the same thing as the word *taxes*. .

It follows from this construction, that the clause in question is not a contract exempting the prosecutors from these assessments for benefits. And as we find nothing in any other part of their charter which necessarily implies such a contract, the result is, that the prosecutors have failed to show any contract of exemption except as to the ordinary public taxes.

But it is further objected on the part of the prosecutors, that even if their charter does not contain the exemption which they claim, these assessments are wrong, and ought to be set aside on another ground, namely, that the property of the society was not benefited as much, relatively, as the property of other land-owners on the line of said streets, and should not have been assessed for benefits upon the same principle.

The cases relied on to support this objection were, *Matter of the Mayor, &c.,* 11 *Johns. R.* 77, and *Matter of Albany St.* 11 *Wend.* 150. These cases are referred to by Mr. Justice Bronson, *In the Matter of William and Anthony Sts.,* 19 *Wend.* 678, who, in delivering the opinion of the court in that case, says with reference to a similar objection : " As a general rule, in making these estimates and assessments, the present use of the property and the purpose of the owner in relation

State, Protestant Foster Home Society, pros., v. Mayor, &c., of Newark.

to its future enjoyment, must be laid out of view. The only safe and practical course, the one which will do equal justice to all parties, is to consider what will be the influence of the proposed improvement on the market value of the property. What is it now fairly worth in the market, and what will be its value after the improvement is made?" *Furman St.*, 17 *Wend.* 668.

In the case of churches and lands which can only be used for a cemetery, a different rule has been laid down. *Matter of Mayor*, 11 *Johns. R.* 77; *Albany St.*, 11 *Wend.* 150. But it should be remarked in relation to these cases, that they proceed on the ground that the owner cannot apply the property to any new or different use. Where the owner has the unrestrained power of alienation, and the property may be converted to any new use at his pleasure, it is difficult to see upon what principle an exception can be made to the rule of regarding only the market value. After the owner has escaped what would otherwise be a just burden, on the ground that he does not intend to use the property in a way which will make the improvement beneficial, he may change his mind, throw the property into the market, and realize advantages for which others have been made to pay.

The rule as here stated by Judge Bronson, we understand to be the correct one. The assessments against the prosecutors in this case appear to have been made in conformity with this rule, and the objection that they are wrong in principle is therefore not sustained.

The assessments are affirmed.

Justices DEPUE and VAN SYCKLE concurred.

REVERSED, 7 *Vr.* 478,

CITED *in State, M. & E. R. R. Co., pros., v. Jersey City*, 7 *Vr.* 57; *State, N. J. R. R. Co., pros., v. Elizabeth*, 8 *Vr.* 334.