## SAINT PAUL & SIOUX CITY R. R. Co. v. COVELL.

1. APPROPRIATION OF LANDS: DAMAGES: COMMISSIONERS MAY TAKE TESTIMONY. Commissioners appointed to assess damages by reason of the appropriation of lands by a railroad company may, upon their own motion, take testimony relative to such damages.

2. MUST APPOINT TIME AND PLACE, AND HEAR EVIDENCE OF PARTIES. Such commissioners should, upon the application of the parties or either of them, appoint a reasonable time and place therefor, and hear such evidence as may be presented by the parties.

3. SAME: TECHNICAL RULES OF EVIDENCE: VIOLATION OF: PREJUDICE MUST APPEAR. Such commissioners are not held to a strict compliance with the technical rules governing the admissibility of evidence; and their report will not be set aside because they have violated such rules, unless it manifestly appears to the Court that the party complaining has been unjustly prejudiced thereby.

4. MAY SEEK INFORMATION: IN WHAT WAYS. They may seek information from all classes of men, and collect it in all the ways that a prudent man usually takes to satisfy his mind concerning matters of like kind.

5. REVIEW OF PROCEEDINGS: CAUSE FOR MAY BE SHOWN: HOW. If good cause for a review of the proceedings exists, such as fraud or misconduct on the part of the commissioners or others, by reason of which a fair, full and honest investigation has not been had, and which does not appear upon the face of the report, such cause may be shown in the usual manner prescribed by the Court in such cases, or by such rules as the Court may adopt for the occasion.

6. ERROR WITHOUT PREJUDICE. The only error relied upon being the reception of illegal evidence by the commissioners, and it affirmatively appearing that the appellant could not have been injured thereby, this court cannot say the court below erred in refusing to set aside the report of the commissioners.

7. WITNESSES BEFORE COMMISSIONERS: JUSTICE MAY ADMINISTER OATH TO. A justice of the peace may properly administer the oath to witnesses called to testify before such commissioners.

8. EMINENT DOMAIN: STATUTE VALID. The provisions of the Code relative to the assessment of damages are in harmony with the settled principles of law governing the exercise of the power of eminent domain.

*Appeal from the District Court of Minnehaha County.*

UPON the application of appellant, the District Judge appointed three commissioners to assess the damages sustained by respondent, Alanson Covell, by the appropriation of certain land for right of

way, and such damages were assessed at $650. The appellant filed written exceptions to the report of the commissioners alleging first, that the report is incomplete in not showing what were the proceedings before the commissioners, and especially in not showing that certain witnesses named were sworn by one Hawkins, a justice of the peace, and testified before the commissioners on behalf of respondent, and against the objection of appellant; second, that the commissioners admitted improper and illegal evidence, and especially in allowing certain witnesses to give their estimate of the damages sustained by respondent, and in allowing one witness to give hearsay evidence of what the railroad company paid Greeley and Dickinson in the way of damages for other lots; third, that the commissioners acted irregularly and illegally in permitting witnesses to be sworn by the justice, and in taking sworn testimony on behalf of the respondent.

A review of the proceedings before the commissioners was had in the District Court upon a statement of such proceedings taken down by one of the attorneys for appellant at the time of the hearing before the commissioners, to which statement was appended the certificate of two of the commissioners, signed by them after hearing the statement read, in the presence of respondent and his attorneys, before the commissioners adjourned, to the effect that the same was a correct statement of the proceedings had before them. This statement contained the evidence taken before the commissioners, and the objections of appellant to the proceedings entered at the hearing.

The attorney also appended an affidavit to such statement showing its correctness.

Upon the review in the District Court the appellant presented its evidence in the form of affidavits. The court overruled the exceptions to the report of the commissioners, and entered an order confirming such report, and a further order that the clerk pay to respondent the amount of damages assessed, out of the moneys deposited in his hands by appellant for that purpose. From these orders an appeal is taken, and the whole evidence and proceedings upon the review are brought to this court by bill of exceptions.

*Pettigrew & Sweezey,* for appellants.

Section 450 of the Civil Code contains an ample grant of power under the law of eminent domain to railroad corporations to acquire and appropriate private property for railroad purposes, with the usual limitation, "that no appropriation of private property for the use of any incorporation * * shall be made until full compensation therefor be first made or secured to the owners thereof. "

The sections following enumerate and subject to this law of condemnation, real property of every nature.

The method of procedure to enforce this law of eminent domain, is all contained in section 452. It provides for the institution of proceedings upon petition of either the owner or the company after due notice to the other party. Upon such petition the district judge appoints three disinterested freeholders of the county or subdivision as commissioners to assess the damages. In this appointment the judge acts as a minister of the law, clothed with a discretion in the matter of his selection, limited only by the qualification that the persons selected shall be disinterested freeholders of the county or subdivision. The commissioners thus appointed being duly summoned and sworn to perform their duties impartially and justly, constitute the primary tribunal to assess the damages in controversy. In our view of the matter, this tribunal is one of special, limited jurisdiction, created solely by the statute and having no powers except such as are conferred by the statute. The statute directs that " they shall inspect " the property and "consider the injury " which the owner will sustain, and "assess the damages " for the same. In these words is an ample delegation of power to the commissioners—power to inspect the premises, consider the injury and assess the damages—plenary power within their province and the scope of their duties, but no power beyond.

The section further directs the commissioners forthwith to make a report of their assessment to the clerk of the court, and briefly what the report shall contain. The corporation upon payment to the clerk of the sum so assessed and reported to him, is then authorized to construct and maintain its road across the premises

in controversy. This assessment is thus made the basis upon which the corporation may make tender of the compensation required to be made or secured to the owner of the land. It is under the law *prima facie* the true amount of compensation to which the owner is entitled. And if the parties within a limited time take no further steps to contest the assessment, it becomes conclusive as to the amount. So far this statute is an appraisement law. In case the parties do not acquiesce in the apprisement of the commissioners, ample opportunity is given to contest the matter upon review in the district court and appeal in the supreme court. But until the proceeding is brought into court, it is simply an appraisement according to the judgment of three sworn appraisers, chosen from a class of persons presumed to be competent to estimate the damages to real property, disinterested, and judging upon actual view of the premises.

I. The proceedings had before the commissioners in this case show that the defendant was allowed to produce a number of witnesses in his behalf, who were sworn and gave oral testimony before them, against the objection of the plaintiff. The objection was that neither the law nor the order of appointment authorized such a procedure.

As we have seen, the words of the statute do not confer any such power. The commissioners shall inspect the premises, consider the injury and assess the damages; in other words, estimate the damages upon an actual view of the property and after due consideration of the injury thereto. And if we understand the scope of this statute, nothing can be inferred from the nature of the duties required of the commissioners leading to the conclusion that they are authorized to hear sworn testimony. They are sworn appraisers and their procedure is an appraisement as distinguished from a trial upon evidence. They are to give their estimate under oath after examination of the subject matter and consideration of the injury sustained, and not to pass upon the weight of evidence. Such is the nature of every appraisement law, of which there are numerous instances in our statute. Reviewers under our highway law perform similar duties (chapter 29, political code, section 23). After having taken an oath, they

shall "proceed to review the proposed highway and assess the damages," etc., and report the same to the county board. So in case of levy upon personal property in which the debtor claims his exemptions under the limitation of value, three appraisers are selected and after taking the oath they make an appraisement of the property. (Code of civil procedure, sections 327, 328.) Precisely similar are the duties of appraisers appointed by the probate court to appraise the property of a decedent's estate. (Probate code, sections 113–116.)

We undertake to say in all these cases it is the established practice, as well as the understanding of the bar and the courts, that the appraisers do not and cannot hear sworn testimony. They have no power to administer an oath or issue a subpœna or compel the attendance of witnesses. Their province is not to determine issues upon the weight of evidence, but to give their impartial judgment on a single matter of difference. Their assessment is of course subject to review by a superior tribunal, and this does away with all objection that the rights of parties may be determined without a sufficient hearing. But so long as the matter is before them, appraisers under such laws can only inspect, consider, appraise, and give the result of their judgment.

It is not claimed that the statute in this case provides for the hearing of evidence before the commissioners. Whence, then, is the power derived? It is absurd to argue that they have inherent power. Without the statute they have no power, inherent or otherwise, and under the statute they can have only the statutory power specially conferred.

But little enlightenment can be derived from the decisions of the courts, as our law is quite dissimilar to the statutes of the various states. Nearly every statute which we have been able to examine providing for an assessment by commissioners, also in express language provides for the hearing of testimony.

The New York statute provides that the commissioners shall view the premises and "hear the proofs and allegations of the parties" and reduce the testimony taken by them to writing. Laws 1850, chapter 140, section 16, as amended laws 1864, section 4. The statute also authorizes them to issue subpœnas and administer oaths to witnesses. (5 Wait's Practice, 354.)

The California statute is the same in substance: "The said commissioners shall proceed to view the several tracts of land, as ordered by the court or judge, and shall hear the allegations and proofs of the parties, and shall ascertain and assess the compensation for the land sought to be appropriated." Practice act, 855: *Railroad company v. Pearson*, 35 Cal. 247.

In Wisconsin, the damages in condemnation cases have always been assessed in the first instance by commissioners, in many cases, however, under special charters.

See cases cited in annotated Ed. statutes 1878, sections 1847–48.

There an appeal from the award of commissioners is tried before a jury *de novo*, and hence the proceedings had before the commissioners seem not to have come before the courts.

The precise terms of our railroad condemnation law we do not find extant in any of the states, and we are informed that it was copied from an early statute of Nebraska, while yet a territory, under which no decisions appear in the reports. But the principle of this law is contained in every appraisement law of the country.

Decisions squarely in point are, however, found in New Jersey, where the law is similar in not providing for the hearing of evidence.

In *Vanwinkle v. R. R.*, 2 Green 162, and *Coster v. R. R.*, 4 Zabriskie, 730, it is distinctly held that commissioners cannot hear evidence.

An inference difficult to overcome is also to be derived from the Wisconsin cases. Under charters and statutes providing for this mode of assessment of damages and not providing for the hearing of evidence, it does not appear from any of the cases during a practice of more than thirty years that the commissioners undertook to hear evidence.

II. Not the least remarkable feature of this case was the intervention of R. C. Hawkins, a justice of the peace, before the commissioners, to administer the oath to the witnesses. It is difficult to say whether this hearing was really an assessment before commissioners, or a trial before a justice of the peace. The latter fur-

nished an office and swore the witnesses, and the former waited, with him to hear their testimony. It was a tribunal of more than ordinary parts! We always supposed that a tribunal clothed with the power to take sworn testimony, had the power to administer to the witnesses the necessary oath. But this board, it seems, in weakness confess their inability to perform this first function of a trial court, and summon into their presence a magistrate to stimulate the consciences of an array of witnesses by this mockery of uplifted hands.

We do not find, nor do we expect to find, any precise authority on the question made by our exceptions to this performance, for the reason that no such thing we apprehend, was ever before attempted.

Justices of the peace are authorized to administer oaths within their respective counties; (Political code, chapter 20); But of course only upon trials and examinations before them, save in case of affidavits for any lawful purpose. The objection is not to the justice's power to administer oaths generally, but that he had nothing to do with this proceeding. To the tribunal before whom this controversy was pending, he was a stranger. His advent was that of an intruder. He had no jurisdiction, power or concern in the matter. Hence an oath taken before him was extra judicial. In *Lumsden v. Milwaukee*, 8 Wisconsin 485, the jury appointed on a condemnation case were in fact sworn before a competent officer, but the court decided that the law did not provide for their being sworn, and that going through the formality of an oath did not sanction their acts. Justice Cole says: "It is very manifest that if the oath was not required by the charter it was extra judicial, and no indictment for perjury would lie upon it, however clearly it might be proven that the jury in their finding and report had acted most partially and corruptly." So in this case, if the justice had no authority or jurisdiction in the premises, perjury could not have been assigned upon the oath administered by him.

In *Perry v. Weyman*, 1 John 520, the justice before whom the cause was tried being desired as a witness, was sworn by another justice. Held, that the oath was extra judicial and improper, and judgment reversed.

III. The next exception relates to the admission by the commissioners of illegal testimony. ˙ Nearly all the testimony heard by them consisted of the opinion of witnesses as to the amount of damages sustained by the defendant. The question put to the witness Adkins, was:

" What do you consider the damages sustained by Mr. Covell by reason of this railroad ?"

The objection was that this was no proper basis for estimating damages. The same question was put to the other witnesses, Fuller, Oaks, Pruner, Davenport and Jones. The result of the evidence thus extracted was the opinion of these witnesses as to the amount of damages—the very matter of difference which the commissioners were appointed to appraise.

In the discussion of this point we will for the sake of the argument concede that the commissioners were under the law authorized to receive evidence. Assuming then that they were so authorized, we claim that they were ˙bound to admit only legal evidence. All the authorities agree that where commissioners are empowered to hear the allegations and proofs of the parties, they should be governed by the ordinary rules of law in the admission and rejection of evidence. (*R. R. Co. v. Budlong*, 6 How.Pr. 467; *R. R. Co. v. Northern Turnpike Co.*, 16 Barb. 100 ; *R. R. Co. v. Deyo*, 5 Lans. 298 ; *R. R, Co. v. Field*, 38 How. Pr. 187 ; *R. R. Co. v. Pearson*, 35 Cal. 247 ; *Petition of Landaff*, 34 N. H. 254.)

We admit that witnesses acquainted with the subject may give this opinion as to the value of property. Indeed this is the usual way to prove values. Within this rule a witness may give his opinion as to the value of certain property at a given time, or at different times, and within this rule are all those cases where witnesses are permitted to give their opinion as to the value of certain real estate before and after the construction of a railroad across it.    . ⸴

But witnesses cannot give their opinion as to the amount of damages sustained by reason of the construction of the railroad. This is the same thing as swearing to the very conclusion which the commissioners are to give in the matter, and is an unnecessary extension of the rule. The extent of damage is to be proved by

facts, including the fact of actual value, and is to be estimated by the tribunal appointed for the purpose. Hence the opinion of witnesses is inadmissible.

(1 Greenl. Ev., sec. 440 and notes; Abbott's Trial Ev., 511; Sedgwick on Damages, 749; *Morehouse v. Matthews*, 2 Conn. 514; *De Witt v. Barley*, 17 N. Y., 340; *Wetherbee v. Bennett*, 2 Allen 428; *Dalzell v. Davenport*, 12 Ia. 437; *Prosser v. Wappello county*, 18 Iowa 327.

The general rule is fully maintained by the decisions of the courts in railroad condemnation cases, where the precise question has been presented.

*Atlantic R. R. Co. v. Campbell*, 4 Ohio St. 583, was such a case. The second error assigned in that case was that the opinion of witnesses as to the amount of damages sustained ought not to have been received, and on this point alone the case was reversed.

The court says: "As to the second error assigned, we are of opinion that the amount of damages which a land owner would sustain by reason of the appropriation of his land by a railroad, is a question of fact to be determined by a jury, and not from the opinion of witnesses, but from the facts of the case; that it is not a question of science or skill which lies more peculiarly in the knowledge of one man than another. But in coming to the conclusion that the opinion of witnesses as to the amount of damages sustained is incompetent evidence, we do not intend to say that a witness may not testify to the value of the land before and after the location of the railroad, but simply that a witness cannot give his opinion as to the amount of damages which the landholder will sustain by reason of the road passing over the land. In admitting such opinions, we think the common pleas erred, and for this reason the judgment is reversed."

Following this case is *Cleveland railroad v. Ball*, 5 Ohio St., 568, in which precisely the same question was presented. The question asked the witness was, "What in your opinion is the damage which Joseph L. Ball will sustain by this appropriation?" The court refer to the former case and give fully their reasons for the

rule there laid down. They conclude by saying: "It is for the jury to find from all the facts, from the value of the land, and the extent and manner in which it is injured, and other circumstances, what amount of damages has been sustained by the landowner. And to allow witnesses to give their opinions as to the amount of the damages suffered, would be to permit witnesses to swear to the conclusion which is the peculiar province of the jury to deduce from the evidence."

*Prosser v. Wappello*, 18 Iowa supra, was an action to ascertain damages to real estate by reason of the establishment of a highway. The question put to several witnesses, was : "State what would be the damage to Prosser's lands and the improvements by the laying out of said road ?" In permitting this question, held : that the trial court erred. The Supreme Court says : "This action of the court was clearly erroneous. This, if allowed, would make the witnesses perform the functions of the jury. The farthest courts have gone is to allow witnesses, otherwise properly qualified, to give opinions as to the value of property. (Citing cases.) No extension of the rule is allowable. There is a manifest difference between proving value and proving damages by the opinions of witnesses."

In *Ferrand v. R. R. Co.*, 21 Wis., *supra*, Dixon C. J., comments on the subject in a condemnation case, as follows : "Let him (the witness) state the value of the lands before the alleged appropriation or injury, and then their value afterwards; and the jury can ascertain the difference. This will avoid all entanglement with the legal rule of damages, which otherwise cannot with certainty be said not to have entered into the estimate of the witness. Questions like those put in this case have not yet received the sanction of any of the courts of New York. They were not involved in the judgments pronounced by Judge Selden (in two cases before referred to,) and the great weight of authority seems decidedly against their admissibility."

In another form the true rule may be stated thus : A witness shall not be asked a question, the answer to which would embrace the merits of the controversy. The following cases are also directly in point : *Evansville R. R. v. Fitzpatrick*, 10 Ind., 120; *Same v.*

*Stringer*, id. 551; *Logansport v. McMillen*, 49 Ind., 493; *Hosher v. Kansas City R. R.* 60 Mo., 329; *Rockford R. R. v. McKindley*, 64 Ills., 338; *Montgomery R. R. v. Varner*, 19 Ala., 185; *Alabama R. R. v. Burkett*, 42 Ala., 83; *Brunswick R. R. v. McLaren*, 47 Ga., 546; *Blair v. R. R.*, 20 Wis., 262; *Harrison v. Iowa R. R.*, 36 Iowa, 323; *Tingley v. Providence*, 8 R. I., 493; Affirmed in *Brown v. same*, 12 R. I.; *Roberts v. Commissioners*, Kansas Supreme Court, January, 1879.

The only authority we find intimating any departure from the rule is contained in a remark in Mills on Eminent Domain, section 165. He admits the general rule is as we have stated it, and cites numerous cases in support of it, and then adds: " Notwithstanding the array of authorities above cited, there seems to be a growing tendency to allow witnesses to give· an opinion on the amount of damages." As authority for this statement, he refers to the following cases: .*White Deer Creek Co. v. Sassaman*, 67 Pa., 415; *Keithsburg R. R. v. Henry*, 79 Ills., 290; *Lehmicke v. St. Paul R. R.*, 19 Minn., 464. But these cases do not warrant the remark of the writer, as a careful examination will show.

In the Minnesota case the only question before the court was whether the witness Rutherford had been .shown. competent to give an opinion as to the value of the land.

In discussing this question the Court says: " Where the value of property, real or personal, is in controversy, persons acquainted with it may state their opinion as to its value; also when the amount of damage done to property is in controversy, such persons may state their opinion as to the amount of damage."

The latter clause in regard to the amount of damage was not called for by the case before the court. The opinion then adds: " It is so held in this court," and ·cites *Simmons v. R. R.* 18 Minn., 184, and *Colvill v. same*, 19 Minn., 283. But in both these cases the question was simply as to the value of property. In the Simmons case the question asked the witness, was: " What was the farm worth at the time the railroad entered upon it?" etc. And in the Colvill case: " What was the value of the property without the railroad thereon, and what was the value of the· same with the road at the time the railway took the same for its purposes?"

So that in the opinion quoted, by the remark, " it is so held in

this court," the Judge can only mean, it is held that the opinion of a witness may be taken as to the value of property, which is within the rule. And the clause of the opinion relative to the amount of damage, is merely dictum, and not supported by the former decisions of the court.

IV. The next error pertains to the testimony of Wm. A. Wilkes, one of the attorneys of the defendant. He testified in substance that one quarter of a mile distant from the land in question is Grigsby's Addition, where one Greeley owned ten lots, and one Dickerman eight lots, through which this railroad runs, and that he was informed the company paid Greeley $400 for his ten lots—some over two acres—and Dickerman $350 for damages to his lots. Specific and urgent objection was made to this testimony. But the witness had eaten of the insane root and become possessed, and the commissioners, under the spell of the contagion, passively acquiesced in the consummation of an outrage upon the rights of a party which they had sworn to protect.

The evidence given would have been wholly incompetent had it been original instead of hearsay evidence. What the company may have paid for other lands not similarly situated, is no proper evidence from which to infer the amount of damages sustained by this defendant. On the face of the testimony it appears the Greeley lots and the Dickerman lots were village lots, while the inquiry before the commission was as to the amount of damages caused to a quarter section of land used as a farm. This, by all the authorities, rendered it inadmissible. (*King v. R. R.*, 34 Iowa, 458; *Lehmicke v. R. R.*, 19 Minn., 464; *R. R. v. Pearson*, 35 Cal., 247; *R. R. v. Orr*, 8 Kansas, 419; *Upton v. R. R.*, 8 Cush., 600; *Winnisimmet Co. v. Grueby*, 111 Mass., 543; *R. R. v. Bunnell*, 81 Pa., 414; *R. R. v. Rose*, 74 Pa., 362.) But the worst feature of this testimony of Brother Wilkes is that it was entirely hearsay. On this ground we submit the point without authority. Counsel will not claim the evidence was competent under any known rule of law. They can only defend it upon the ground that these commissioners are not amenable to any rules of law, or palliate it as an outburst of the spirit of irresponsibility that ruled the hour.

Another exception in the court below was that this report was

incomplete in not showing what were the proceedings before the commissioners. It has been held in California, where similar proceedings are common, that this of itself constitutes "good cause" for setting aside the report. (35 Cal., 247.) But as the proceedings were brought before the court upon review without question as to the manner of doing so, we do not care to insist further upon this exception. The review was in fact had upon the report supplemented by the proceedings thus brought before the court.

The Statute relative to such review in the District Court, provides: "That the report of the commissioners may be reviewed by the District Court, on written exceptions filed by either party in the clerk's office within sixty days after the filing of such report; and the court shall take (make) such order therein as right and justice may require, either by confirming, modifying or rejecting the same, or by ordering a new appraisement, on good cause shown."

Here is an ample grant of power to the court to review the proceedings of the commissioners which are or should be contained in their report—power to confirm the report, which follows as a matter of course if the exceptions are not well taken as a matter of law, or are not supported by proof; power to modify the report, for instance, by striking out an illegal item thereof; power to reject the report, which would imply the power among other things to send the same back to the commissioners for amendment or other action by them, and power to order a new appraisement either by the same or other commissioners.

All that is required to move the court in the exercise of this power in any case, is "good cause shown." The method of procedure is clearly indicated by the courts of California and New York, where the proceedings are similar, except in that their Statutes provide for the hearing of testimony before the commissioners. We quote from the Pearson case, 35 Cal.: "The review of the court is intended to be founded upon the report of the commissioners, so far as all matters which should be there stated are concerned, and not upon bills of exception or statements in the sense of the Practice act in relation to new trials. If the report does not show fully what the proceedings before the commissioners were, it

should be set aside for that reason, or sent back to the commissioners for amendment. * * And if the commissioners do not make such a report as both the Statute and the nature of their power demand, it is the duty of the court to compel them to do so. And if from any cause such a report cannot be obtained from them, that fact of itself is, in our judgment, ' good cause ' for setting aside the report in the sense of the Statute. When the report is thus made, what as we hold the Statute designs it should be, there will be, in a majority of cases, no occasion for going outside of the report itself upon a motion to set it aside. If, however, ' good cause ' exists, which does not appear upon the face of a report, after it has been made to respond to all the calls of the Statute, such as fraud or misconduct on the part of the commissioners or others, by reason of which a fair, full and honest investigation has not been had, such cause may be shown by affidavits or other competent evidence, or in any legal mode which the court in the exercise of its general supervision over cases of this character, may prescribe by its rules or adopt for the occasion."

The rule derived by Wait from the New York cases is as follows : " If, however, the report should be untrue in any material respect, or the proceedings have been irregular, and the report fails to state the facts constituting such irregularity, upon a proper application made directly to the court by the person opposed to the confirmation, the report may be set aside and vacated." (Citing cases.)

" On such application both parties would be permitted to spread before the court all the facts in their power to furnish, bearing upon the questions of the truth of the report and the regularity of the proceedings of the commissioners." (5 Vol., 360.)

Under this grant of power contained in the Statute, and in the light of these authorities as to the method of procedure, we think the decision of the court below was clearly erroneous. It must be borne in mind that our exceptions were in the nature of a direct application to a court of revisory power for the correction of alleged errors and irregularities. All we need show to relieve us from such an award was error or irregularity on the part of the commissioners. If they proceeded upon a wrong theory of our

appraisement law, or misapprehended the principles by which they were required to assess the damages, or were imposed upon by witnesses acting under the apparent sanctity of an extra-judicial oath, or received illegal evidence, their report and proceedings should have been rejected and set aside.

Our exceptions were fully supported by the proofs, and, indeed, as to the facts, are not disputed. We have endeavored to show by reference to the Statute and to authority that they were well taken as a matter of law. We only desire to add a further suggestion by way of argument:

1st. If it be held that commissioners under our law are by implication authorized to hear testimony, it opens an endless field of judicial legislation. Provision must also be implied empowering them to issue subpœnas, compel the attendance of witnesses and administer to them the oath. The courts must find out a way to preserve the evidence and bring it before the court for review. Some provision must be inferred in regard to witness fees. No provisions appear in the Statute for any of these things. The commissioners shall assess—settle, fix, ascertain, (Webster)—the damages and "forthwith make report thereof, * * * setting forth the quantity, boundaries and value of the property taken, or the amount of injury done to the property." Indeed, not only is no provision made for hearing and reporting testimony, but this direction as to what their report shall contain would exclude any such construction by implication. *Expressio unius est exclusio alterius.* In defining the powers of the District Court upon review, the Statute declares such court may order a "new appraisement." Construe this Statute to be any other than a plain, ordinary appraisement law, and all is uncertainty and confusion, until the courts shall have embraced the whole subject by intelligible judicial legislation.

2d. If the Statute does not warrant the hearing of evidence, it must always operate as a surprise upon parties for the commissioners to allow it. Upon the principle that every litigant is entitled to be present when his rights are being adjudicated, and to secure fairness and regularity in the proceedings, our law requires notice to the parties of the meeting of the commissioners. Pur-

suant to such a notice, we appeared in this case.    No notice had
been served upon us that evidence would be offered, nor does the
law give us constructive notice of any such thing.    The defendant
also appears in person and by counsel, and with him his six faith-
ful followers as witnesses, and a justice of the peace to administer
the oath ; and this *ex parte* hearing proceeds, in which the faithful
six support each other with an opinion, and one of the lawyers
supports them all with some second-hand testimony, without moles-
tation, except by objections, and without fear of contradiction.    If
we should have summoned our volunteers for this occasion, and
taken unto ourselves a magistrate to render certain a sufficient
degree of solemnity on our part, and have maintained an equili-
brium in the scales of justice, by opposing opinion with opinion,
and hearsay with hearsay, we confess we made a big mistake, and
the responsibility is ours.    If not, we were right in declining to
cross-examine or introduce testimony.

3d.   In proceedings of this character, commissioners should be
held to careful conformity to the provisions of law under which
they act, for the reason that they are special statutory proceedings
in which no extension of their powers is necessary to effectuate the
object of the Statute.    Again, they are often intrusted with im-
portant interests, in cases, too, where the one party in the prose-
cution of large enterprises is compelled to seek an appropriation of
the property in controversy at whatever cost, and the other party
is prone to exact excessive damages from his soulless adversary.
And then in case their proceedings have been made to respond to
all "the calls of the Statute," and their appraisement has been
made upon correct principles and according to legal rules, and all
else is fair and regular, controlling effect must necessarily be given
to their award as to the amount of damages—certainly as much
weight as to the verdict of a jury.    (See Kearney street cases, com-
mencing with appeal of Piper, 32 Cal., 530, and the celebrated
street condemnation cases in New York there cited.)

Hence, in all other matters, their proceedings should be care-
fully scrutinized, and made to conform to those established rules
of law by which right and justice are ordinarily attained, before
their award is confirmed and made of binding effect upon the
rights of parties.

4th. In the matter of the oath to witnesses, either the commissioners have the power to administer it, or have not. There can be no middle ground, no mere option, no discretion about it. If they have this power, it was simple dereliction in this case to delegate it to a magistrate. And if the justice had no authority to intervene for the purpose, the error is even more manifest. Suppose it is a *casus omissus* in the law; this does not help out his authority. If we are correct in our view of this matter, the whole proceeding before the commissioners was a stupendous farce, a mockery of judicial forms, an imposition upon the commission, calculated to destroy the foundations as well as the usages of all legal inquiry. To allow a magistrate to enter the province of an independent tribunal and impress upon its proceedings anything of his brief authority, should not be tolerated for a moment. It is wrong in principle and in practice.

5th. As to the character of the evidence contained in this record, comment is unnecessary. All of it except a scrap of other testimony by Covell is either the opinion of his allies as to the amount of damages, or hearsay evidence as to what was paid for other lands. Strike out all this illegal testimony and there is nothing in the nature of proof to justify the second item of the award to which we especially objected. The commissioners by their report, say : " The value of the strip of land taken is $200, and the amount of injury to the premises not taken is $450." Covell's scrap of testimony as to his liability to fires and inconvenience in working the land, does not account for this extravagant award of $450 over and above the value of the land. The only other evidence was the evidence of the senses from a view of the property. And it is incomprehensible that any three fair men who value the land required for the right of way at $200, should see any other actual damages amounting to $450. This would be an optical illusion.

The first item they say is actual value, and of this we do not complain. The other item comes from the remote and shadowy region of speculation, conceived in the opinions of the men who have on all occasions surrounded this case like the six satellites of Herschel.

Courts will presume that error in the admission of illegal evidence is prejudicial. As said by Sanderson, in 35 Cal., 261: "The commissioners should receive as testimony none but legal testimony. They cannot receive illegal testimony, or reject legal, without the same consequences which would follow like action on the part of a court. For if they admit illegal testimony, it must be presumed that they believed it to be legal, and therefore founded their final judgment in part upon it."

We submit the errors upon this record are manifest, and respectfully ask to have the decision reversed. ·

*R. J. Wells* and *Grigsby & Wilkes*, for respondents.

The questions that are before the court in this proceeding involve more than the interests of this respondent. The time has now come when it is a matter of the highest importance to the people of this Territory to know what construction is to be put by this court upon the Statute under which the right of eminent domain is exercised, and we are free to say it is of less consequence to us that the action of the court below should be affirmed than that a decision should be arrived at which will set at rest the doubt and uncertainty which has seemed to gather about almost every step of this proceeding.

As we view the case, the Statute and rules applicable to an appeal from a judgment of the District Court in an ordinary action have no application here. It is a special proceeding, and from its very nature the matters to be passed upon here are identical with those reviewed by the court below, so it is the province of this court "to take such order herein as right and justice may require either by confirming, modifying or rejecting the award or by ordering a new appraisement on good cause shown" and then the final decision may be transmitted by the clerk of the proper court to the proper register of deeds to be by him filed, etc. The whole of this case then by the plain provisions of the law stands for consideration in this court without reference to rules provided in cases of appeal from a judgment at law, and you are to consider not only the errors assigned by appellant, but the exceptions of respondent, as well, appearing in the record of this proceeding.

Saint Paul and Sioux City R. R. Co. v. Covell.

The right of eminent domain is not one conferred by Statute, neither is it derived from the Federal Constitution, but exists independent of both as a rule of the common law arising from the necessity of government itself. The exercise of this right is one of the highest prerogatives of government, and the Federal Constitution has imposed restrictions upon its use and the Legislature can not pass any law in conflict with the Constitution. (Organic Act, section 1857.)

When the right of eminent domain is exercised by the State, the necessity for the taking of property is determined by the government acting through its proper agents, and this having been determined, the damages sustained by the owner of the property necessarily follows as the next matter to be passed upon. So under the highway laws of this Territory, to which the appellants refer in their brief, we find the viewers in the first instance determine upon the " public utility " of the road, then another body called reviewers assess damages: to the same effect see *People v. Smith*, 21 N. Y., 596. See also in matter of Anthony St., 19 Wend., 681. But in this case the prerogative of the sovereign is delegated to a private corporation which takes property not for the State but for itself, and makes it the private property of the railroad company. The very first step of deciding, whether or no an appropriation shall be made, is left to the determination of this corporation under the law, and upon this question the land owner may be debarred from a hearing; when, however, the next step comes to be taken and an assessment of the damages which the owner will sustain is to be made, we maintain that the law must provide a tribunal before which, somewhere, and at some time the land owner can come and have a hearing, and if our Statutes do not furnish this " day in court " as it were, this opportunity to be heard, it is unconstitutional and void, because it contravenes the guaranty of the Federal Constitution, that no man shall be deprived of his property without due process of law. The gravamen of appellant's argument is that the commissioners appointed under the provisions of section 452 are without authority to hear evidence, that the Statute does not confer any authority to receive testimony, " the sworn testimony of witnesses," and just here we may remark in passing, that we do not understand what

appellant's attorneys mean by using this term—we had always supposed Bouvier to be correct in his definition that "a statement made by a witness under oath was testimony," but counsel probably thought that this meaningless phrase, *sworn testimony*, would lend some additional force and power to their argument. If now we concede for the purpose of this argument that the commissioners can not under the law give the hearing to the respondent which he claims, at what other stage of the proceedings is it granted to him. "Ample opportunity," says the appellant, "is given to contest the matter upon review in the District Court," yet they say too that the court simply reviews the report upon written exceptions, and here we agree with them. The plain letter of the Statute puts a hearing upon the merits entirely out of the question in the District Court, the report when brought there is to be "reviewed" on written exceptions filed, and the court shall take such order as right "and justice may require, either by confirming, modifying or rejecting the same or by ordering a new appraisement on good cause shown." Most clearly there is nothing to be gleaned from this law indicating that a hearing upon the merits can be accorded in that forum. On the contrary, if it should appear that a fair assessment had not been made it is in the power of the court to provide for a new appraisement. Why, we ask, provide for a new appraisement unless it be that the law makers intended that the hearing upon the merits should be had before the commissioners?

"Neither the law nor the order of appointment authorizes such a hearing," urge the appellants. Then we have a law which forcibly divests a man of his land and strips him of his possessions without a hearing or an opportunity to be heard, and without "due process of law." Such things cannot be. The Legislature must make a Statute providing a certain remedy for the payment of damages and the ascertaining of the same. Private property cannot be so taken without a tribunal be provided that furnishes an opportunity for an equal hearing to both parties. (Dwarris, Stats. and Cons., pp. 392.)

The Supreme Court of Wisconsin in construing the constitutional provision that "the property of no person shall be taken for

public use without just compensation made therefor," say : " The commissioners to value land and ascertain and determine the damages as contemplated by that instrument are to be fair and impartial men, indifferently chosen or appointed between the parties, and their investigation is to be open and known to both, giving to each an opportunity to appear before them and make such statements and offer such proof as may be necessary and proper." (*Powers v. Bear et al,* 12 Wis., 236 old ed., 214.) In the same case the court says further of the tribunal that acted in that case : " They act without evidence, and their sessions are not public. As a proceeding to determine the rights of the land owner it is a mere mockery. No one will say that such a proceeding is in compliance with the Constitution or that it can be tolerated." ·

The Supreme Court of Minnesota in the case of *Langford v. Commissioners, etc.* 16 Minn., 375, says as to the question of compensation : " The owner of land taken for public use has a right to require that an impartial tribunal be provided for its determination, that the government is bound to provide such tribunal before which both parties may meet and discuss their claims on equal terms." " The act in question does not provide such a tribunal." The land owner is not authorized to appear at any stage of the proceedings to object to the commissioners, to introduce any proof or allegations before them; the proceedings are entirely *ex parte.* We think the provision made for compensation to the owner contravenes the Constitution and is void."

In the case of *Stuart v. Palmer,* 74 N. Y., 188, the court says : " I am of the opinion that the Constitution sanctions no law imposing such an assessment without a notice to and a hearing or an opportunity for a hearing by the owners of the property to be assessed. The law must require notice to them and give them the right to a hearing and an opportunity to be heard." I must be conceded that property can not be taken by the right of eminent domain without some notice to the owner or some opportunity on his part at some stage of the proceedings to be heard as to the compensation to be awarded him."

In 43 Cal., 79, the court in construing a road law says : " The

right of a party whose lands are appropriated for public use to receive compensation therefor is undoubted. While it is unquestionably competent for the Legislature to provide the several steps to be pursued in the assertion of his claim for compensation, the prescribed procedure must not destroy or substantially impair the right itself. A reasonable opportunity must be afforded him to claim and receive his damages."

In the case of *Symonds v. Cincinnati*, 14 Ohio, 174, the court said in dealing with a like question: " Provision must be made by law for the assessment of the damages the owner of the property will sustain, in some fair and equitable manner and before some competent tribunal where the parties can be heard."

"If either has been excluded from a hearing the appraisement will be void." (Mill, section 234.)

In the report made by the commissioners in the case at bar, they say, " We went upon the premises and carefully inspected the same and considered the injury which said owner would sustain by reason of said railroad, and the appropriation of said strip of land by said company for a right of way across said premises, and after hearing the respective parties upon the subject of said damages, did ascertain the value of the strip so taken, etc." And when we consider that this report is not in fact the work of the commissioners, but is made up in printed form, having first been prepared by the best legal advisers of appellant, and is a form in general use throughout the Territory in these condemnation proceedings, we must infer that care and skill was exercised in drafting the same, and that it was considered important to show on the face of such reports that a hearing was accorded to the land owner. About all of the instrument in truth framed by the commissioners is in the place left blank for the insertion of the amount of damages, and the other blank where they sign their names. And we believe in this case under consideration that after agreeing as to the amount of damages, they only walked down to the office of the appellants' attorneys and signed their names to the report prepared by the counsel for appellant. Without due process of law respondent can not be divested of his land. This, says Mr. Webster, " is a proceeding

which proceeds upon inquiry, hears before it condemns and renders judgment only after trial." In *Weiner v. Brienberg*, 30 Mich., 201, the court says: " Due process of law is not confined to judicial proceedings but extends to every case which may deprive a citizen of life, liberty or property." Judge Cooley says in his work on Cons. Lim., 365, " due process of law is not confined to ordinary judicial proceedings, but extends to all cases where property is sought to be taken or interfered with. In each particular case it means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as the maxims prescribe for the class of cases to which the one in question belongs."

In the light of these authorities, then, the argument of appellant becomes.a sort of boomerang, which returning strikes with deadly effect him who sent it forth.

Now, can that part of section 452 relative to the assessment of damages be so construed as to bring it into harmony and make it accord with the settled principles of law? We say yes, but only by putting upon it a construction such as we have done and by dealing with it in its practical application as we have sought to do. The commissioners are appointed by the judge, and this is but a ministerial act. It is not required that these commissioners shall be especially qualified to act in the line of business with which they are entrusted. The judge is not to ascertain in regard to their qualifications to act, farther than to require of the sheriff that he summon three disinterested free holders, selected by the judge, and who must not be interested in a like question. And the commissioners are then to assess all damages to the owners of real property in the county or subdivision. They may be well informed as to the matters they are to pass upon or they may have but a very limited knowledge of these things. It may be that they are old residents of the Territory, which fact some people seem to think fully qualifies a man for any duty to which he may be called, or for any position to which he may aspire, or they may be new comers from States where values are wholly different from what we find here. It might be that they come from a remote

farming district and are totally unacquainted with the values of property near to and about the villages and towns, or they may be chosen from the city or village and are without a just conception of the rights of their rustic neighbors. It would certainly seem then, that when these men come to perform their duties impartially and consider the injury and assess the damages, they should be entitled and authorized by the law to obtain all the information possible in each given case of assessment, and from any and all sources within their reach. No fixed rule of compensation could well be laid down for them to act upon. The damage and injury done to one tract may be entirely different from that occasioned to an adjoining one. They are to consider all the elements of damage, too. And certainly the Legislature never intended that " three disinterested free holders not interested in a like question," could be selected from the body of a county or subdivision who would be competent in all cases to perform such duties wholly unassisted by information derived from other sources: Common sense, and the better reason to be applied in all cases, dictates so much at least. In construing the Statute, appellants in deference to an ancient maxim, apply the rule of exclusion in the interpretation of this section, 452, and urge that as the admission of testimony is not specifically provided for, therefore it is expressly prohibited. Rather let us so construe and interpret this law as to be in harmony with the constitutional restriction and consonant with common justice. We have in our statute this maxim of jurisprudence : " an interpretation which gives effect is preferred to one which makes void." True, the Statute is silent upon this question of the admissibility of evidence, but what it omits the constitutional prerogative supplies. There need be no method of procedure marked out and yet private property may be taken for public use, but it must not be taken in a manner that conflicts with the Constitution, and because the Legislature has indicated a method of procedure not full and specific, there is no reason for contending that it excludes essential requirements, that would render the law unconstitutional and void. " It is the duty of the court to uphold a Statute when the conflict between it and the Constitution is not clear," says Judge. Cooley in Cons. Lim., p. 184. " A thing which is within the object, spirit and meaning of

a Statute is as much within the Statute as if it were within the letter."—Dwarris, page 176.

Again on page 144, we find as one of the American rules No. 6, "Statutes must be interpreted according to the intent and meaning, and not always according to the letter." And yet again No. 4: "It is the duty of courts to so construe Statutes as to meet the mischief and advance the remedy, and not to violate fundamental principles."

Section 453 provides that a notice for ten days must be given to the land owner of the assessment of damages. What is the object of this notice? Is it a mere figure of speech, a meaningless phrase, that stands for naught? Such, indeed, it would seem to be, if the argument of appellant be correct. At most, it would go no farther than furnish information that the assessment would not be made secretly, or that he might come, and with closed lips be permitted to witness proceedings, which, without any word in his behalf, would divest him of the fruits of his toil. We contend now, that this notice implies the right of the land owner to be heard; to assert his rights; to give evidence; to furnish information in any way, shape or form that it may come, without reference to technical rules of law.

Mr. Mill says, section 597, in his Eminent Domain, "Notice is provided for the purpose of giving an opportunity for appearance and contest." And such a construction as this given to the law, makes that portion of our Statute reasonable, and conformable to fundamental principles. The commissioners then, we say, constitute the tribunal before which the land owner is to be heard on the merits, but we do not claim that they are bound by the testimony, statement or matters presented by the land owner. We quote from Mill, Em. Dom., section 246, "commissioners are not bound by the opinion of experts, or by the apparent weight of evidence, but may give their own conclusions." Again, section 244: "While evidence as to the amount of an award and its justness is admissible, it is not controlling;" again section 237, "commissioners are not governed exclusively by the evidence before them, but may be guided by a view made by them," "the commissioners must pass on the competency of the evidence." "A

refusal to grant a fair hearing would cause a reconsideration of the report," "but the award will not be set aside for technical error," "it should be of such a character as to show that the commissioners have misapplied the principles upon which they were to make their appraisement."

In the Spring Garden Street case, 4 Rawle, 192, the Supreme Court of Pennsylvania, says: "An inquest of this sort is restrained to no particular species of evidence, and may resort to any source of information which the members of it may think proper." In the matter of William and Anthony streets, 19th Wend., 694, Judge Bronson, in giving the opinion of the Court, says, speaking of the commissioners, "the very first thing required of them by law after being sworn, is to view the premises affected by the improvement. They are thus to acquire information which there are no means of bringing before the court." And here we find a reason why our District Court sitting in review cannot pass upon the merits, for we have no means of bringing to the court that evidence to the commissioners furnished by their "inspection of the premises." The court goes on to say further in this case: "I entertain no doubt that the commissioners may take the opinions of others in whose integrity and judgment they have confidence without swearing them as witnesses. They may converse with all classes of men concerning the business in hand, and collect information in all the ways which a prudent man usually takes to satisfy his own mind concerning matters of like kind. The commissioners must exercise their own judgment at last, but they may first seek light from other minds, the better to enable themselves to arrive at a just conclusion. In settling questions of value the commissioners do not act as a court and jury and decide upon the evidence of witnesses examined before them. If in any case they make the opinions of other the basis of their action without exercising their own judgment, those opinions should be given under oath." If in any case "they take the testimony of witnesses in relation to value, it is but an item in the account which may go to qualify but cannot control their own opinion." In 35 Cal., *W. P. R. R. v. Reed*, the Court says: "The commissioners are not bound by the testimony of witnesses, but are not only allowed but required to view the premises and found their awards upon their

own judgment as well as that of the witnesses." In 6th How, 469, a case referred to by appellant, the Court says: "It was the duty of the commissioners after reviewing the premises and hearing the evidence to decide from the evidence furnished by their view as well as from the testimony of the witnesses before them. They were to exercise their own judgment founded upon the view in connection with the other evidence and not to the exclusion of it."

We think from what we have now presented for your honors' consideration, it is clear that our law provides for a hearing to the land owner, before the commissioners; that upon the hearing evidence is admissible, and we now come to consider appellant's proposition; that because of the incompetency of certain evidence introduced, the award made should be set aside.

Appellant argues that the manner in which the questions were put, is objectionable—or, rather, he objects first, to the questions being asked at all; and, second, he objects to the form of the question, and cites a list of authorities, in support of this position, and quotes at length from the 21 Wisconsin, in the case of *Terrand v. R. R. Co.*: "Let him (the witness) state the value of the lands before the alleged appropriation or injury, and then their value afterwards, and the jury can ascertain the difference. This will avoid all entanglement," etc. It seems strange that a court of the dignity of a Supreme Court could reason thus. How this will avoid entanglement, the court does not attempt to explain, and, indeed, it would be very difficult to explain.

What difference is there in the idea suggested to the mind of the jury? What difference can there be in the amount of damage arrived at by the witness? In one case he says the damages are $1,000 direct and without any circumlocution. In the other case he says the damages are. $1,000 with circumlocution, by stating that the value of the land was $3,000 before the taking, and is worth $2,000 subsequent to the taking. Thus he keeps the poor juryman from entanglement by allowing *him* to make the subtraction, and legal form and ceremony is secured, and a musty precedent is followed. If there be any reason for this avoidance of a plain, straight-forward way, let us hear it. Don't hide behind precedents that cannot give a reason for their existence. That the rule has been as appellant states, we admit, with some qualifica-

tions; that such is now the rule we do not admit. The later and most carefully considered opinions by the courts of last resort, have refused to follow those precedents that are manifestly founded in error, and the rule in many states is to allow the direct question to be put to a witness, "what is the damage?" And surely no good reason can be given against allowing the question in this form.

If the witness is competent to state the value of the land, both before the taking and subsequent thereto, then is he competent to state the amount of damages.

These authorities, cited by appellant, all decide this question upon the rules of evidence in a legal tribunal and before a jury. We apprehend there is quite a difference between a District Court and a board of commissioners composed of three farmers. What would be proper in one case might be improper in the other. It is not to be expected that this board of commissioners is to decide upon all the intricate points of law in relation to evidence, but rather, we think, are they under this "ample grant of power" which the appellant insists they have to obtain knowledge and information from all sources available, and then are they to consider the injury and assess the damages as we have hereinbefore contended. Any other view of this law renders the entire act of condemnation a hollow mockery. Furthermore the tenor of the latest authorities is the reverse of the rule laid down by appellant (See case *Simmons v. St. P. & Chicago R. R.*, 18 Minn., 184; *Lehmicke v. St. P. S. & T. F. R. R.*, 19 Minn., 464; *S. P. & St. C. R. R. v. Murphy*, 19 Minn., 500; *Curtis v. St. P. S. & T. F. R. R.*, 20 Minn., 28; *Sherwood v. St. P. & Chicago R. R.*, 21 Minn., 127; *Shattuck v. Stoneham Branch R. R.*, 6 Allen (Mass.) 115; 101 Mass., 183; 9 New York, 183; *White Deer Creek County v. Sassman*, 67 Pa.; *Keithsbury R. R. v. Henry*, 79 Ills., 290; Mill on Eminent Domain, § 165.)

Appellant states on page 14 of his brief, the true rule thus: "A witness shall not be asked a question the answer to which could embrace the merits of the controversy." Citing 13 cases as directly in point. Of the 13 cases enumerated in his brief, only two are accessible. From the absent 11, of course appellant can draw strong arguments, and is secure from contradiction; but let

us see how it is with the *two* that are at hand. In the case of *Harrison v. Iowa R. R. Co.*, 36 Iowa, 323, the question asked was, "how much less in value was the farm immediately after taking the land for the right of way and in consequence thereof, than it was immediately before, not taking in account any supposed benefits to result from the building of defendants' road?" Here is a question objectionable in many ways. It is not one that would be admitted in any court, and furthermore it is not parallel to the case at bar, for this question was asked in open court before a Judge and jury, upon a case appealed to the District Court, while in the case of *Blarie v. R. R.*, 20 Wisconsin, 252, an action was brought by one of a mercantile firm against a railroad company for injury to plaintiff's person. Held: plaintiff could not ask the other partner as a witness for him what was the amount of damages to said firm for a specified time by reason of plaintiff's absence caused by his injuries. This case needs no comment. The same objections apply to it as to the former, though in greater degree, and it is not a case in point.

Appellant admits there is some authority for asking the question in the form in which it was stated, but adds: "the cases do not warrant the construction put upon them by Mill in his work on Eminent Domain, section 165, wherein he states that 'notwithstanding the array of authorities above cited, there seems to be a growing tendency to allow witness to give an opinion on the amount of damages,'" citing: *White Deer Creek Co. v. Sassman*, 67 Pa., 415; *Keithsburg R. R. v. Henry*, 79 Ills., 290; *Lehmicke v. St. P. R. R.* 19 Minn., 463.

Here again are we met with the assertion that these absent authorities do not bear out the remark of the writer. We should infer from Mr. Mills' treatment of the subject, that he, at least, had access to these authorities. We will content ourselves, however, with an examination of the one at hand, viz: 19 Minn., 464, wherein the Court says, that "when the value of property, real or personal, is in controversy, persons acquainted with it may state their opinion as to its value; also where the amount of damages done to property is in controversy, such persons may state their opinion as to the amount of damage, citing: 6 Allen (Mass.) 115;

*Simmons v. R. R.*, 18 Minn., 184; *Colvill v .R. R.*, 19 Minn., 283. This would seem to be in point and too direct to be misunderstood.

In the last named case the defendant asked the court to instruct the jury, " that the opinion of witnesses as to the amount of damages done to or sustained by Simmons, by the construction of the railroad over the premises are not competent evidence." " The jury are to form their conclusion in relation to the same from facts proved." The Court says: " We agree with the Supreme Court of Massachusetts, when the value of the property, real or personal, is in controversy, persons acquainted with it may state their opinion as to its value; also where the amount of damage done to property is in controversy, such persons may state their opinion as to the amount of the damage," citing 6 Allen, 115. In case of *Curtis v. R. R.*, 29 Minn., 28, three witnesses testified as to the value of the premises and the damages by reason of the taking by the appellant, R. R. Co., and the court held it not error. To the same effect is *Sherwood v. R. R. Co.*, 21 Minn., 127, which cites: *Clark v. Baird*, 9 N. Y., 183; see also *Snyder v. W. U. R. R. Co.*, 25 Wis., 60; *Hutchinson v. C. & N. W. R. R.*, 37 Wis., 610; Wharton on Evidence, §§ 509 and 10 *et sequitur*, and §§ 446 and 450; *Swan v. Middle Essex Co.*, 101 Mass., 173.

From the above citation of authorities it is quite apparent that if the rule ever existed, that commissioners could not receive testimony of the character of that given in the case at bar, that it has now become obsolete. We wish to urge again that all the authorities cited by appellant have reference to adjudications in courts, and are decided under appraisement laws that gave owners of property a hearing before a jury in a court of appeal, and that these decisions are not authority for a board of commissioners indifferently chosen from the ordinary walks of life, who know nothing of law, or the rules of evidence.

The record in this proceeding shows that two awards have been made although in fact three have been had. The first one shown in the record is for $773.33 and the last one for $650.00. The evidence of the witnesses introduced tended to show that the damages sustained were from $1,000 to $1,500. The affidavit of McGarrah, one of the commissioners, (see abstract record page 8,)

shows that the commissioners disregarded this testimony, and that the award was made upon their own judgment, and the award itself is a sufficient demonstration that the evidence was rejected in the final consideration given the matter by the commissioners. It might be that because of this disregard of testimony *we should be entitled to another appraisement*, but that appellant should be entitled to an order setting aside the award on account of the introduction of testimony which did it no harm we do not believe.

This award may only be set aside upon "good cause shown," and we submit that in all the argument of appellant not one point is made that is more than simply a technical objection. Even in the trial of an action at law, and before a jury, errors in admitting evidence will be disregarded when the result is shown not to have been affected by the errors; but we say no errors have been committed of which appellant can take advantage. And upon the question of costs and interest in which the court below ruled against respondent, this court has authority to correct the wrong if such it be.

In 6th How. R. 467, *R. S. R. R. Co. v. Budlong* the court says, " The court will not interfere and set aside the appraisal . on the ground that the compensation awarded is too great or too small, unless the evidence of injustice is palpable upon the face of the proceedings as contained in the report. And in *R. & O. R. R.* *Co. v. Field*, 38 How. Pr. 189, the court says: " The report itself must show that an error has been committed or that injustice has been done to enable the court upon appeal to reverse the proceedings. In order to set aside a report because irrelevant evidence was admitted it should appear that evidence was the foundation of the award." (Mill Em. Dom. Sec.; 13 Barb., 169; 16 Barb., 68 and 103.)

In the case cited by appellant, 35 Cal., 260, the court says, " the objection to the proceedings of the commissioners are that they received incompetent testimony and *acted upon it* in ascertaining the amount of the compensation which was awarded, and they included in the award, damages to which respondent was not legally entitled."

And so the objections of appellant become reduced to the proposition, not that the commissioners were prejudiced, and acted unfairly in making their award, nor that they proceeded upon a wrong principle in naming the amount of damages to which the respondent was entitled, but simply that in the *modus operandi* they went beyond the established rules of evidence. Can these objections be available in this court for the purpose of a new appraisement? Manifestly not in the light of the authorities we have already cited, and from the following: "Reports are only to be set aside on good cause shown, not because the parties are dissatisfied with the amount of the award." (Mill Em. Dom. Sec. 243; *Virginia R. R. v. Elliott*, 5 Nev. 358 Stat. sec. 452.)

"The error to be corrected must be in the principle of assessing values or some obvious error in calculation." (Mill Em. Dom. Sec. 245 and cases cited.) "An appellate court will not interfere with the report of commissioners to correct the amount of damages except in cases of gross error, showing prejudice or corruption." (Mill, S. 246, and cases cited.) "In the exercise of the discretion vested in the court upon appeal from an award of commissioners, it will not interfere with their proceedings, unless satisfied that some substantial error has been committed, (*Troy & B. R. R. Co. v. N. T. Co.*, 16 Barb. 100.

"The review will be confined to errors appearing upon the face of the report, as the law makes no provision for bringing up the evidence." (*Retenbaugh v. C. v. R. R. Co.*, 21st Penn. Stat. 100.)

We might multiply indefinitely, almost, authorities in accord with the foregoing, but deem it unnecessary. Our Statute says the report shall "set forth in quantity, boundaries and value of the property taken, or amount of injury done to the property which they assess to the owner." The report in the proceeding does this much and more.

Another point made by appellant is that the sum of $450 damages done to the farm aside from the $200 given as the value of the land taken, is an extravagant award; that it is improper for commissioners to consider and give compensation for damages to the entire tract caused by the construction of the road, aside from the pay for the land actually appropriated, is not claimed.

That they may do so is a proposition too well established to require authorities here. How, then does counsel know that it was "extravagant?" They call it an "optical illusion," and just how such a term can be applied to the operation of a man's mind, or to the judgment of "three fair men" upon a question of damages like unto this, is difficult to conceive.

The commissioners in making up their judgment, may have considered that this tract of land lies adjoining the village of Sioux Falls, and that the diminution in value of the remainder of the property from its probable use would be great. Or they may have considered—going upon the ground as they did, at the time when there was nothing remaining of a harvested and stacked crop but blackened embers, the result of a fire caused by the engine of this company, that there was great hazard from fire, and which loss, too, by the way, we remark, this great benefactor of communities and individuals has refused to pay, up to the present time. And they may have considered too other elements of damage fully within the scope of their authority, That they did not take the opinions of the witnesses is apparent; and upon the matter their judgment is final, for neither this court nor the court below have any means under the law of ascertaining that their judgment was founded upon error. We cannot do better on this question of damages than to quote from Cooley's Cons. Lim., p. 566, note 1: "A motion was made for a new trial on an assessment of compensation for land taken by a railroad company, on the ground that the judge in his charge to the jury informed them that they were authorized by law to ascertain and assess the damages sustained to his other lands not taken and occupied by defendants, etc," On a careful review of this charge, says the judge,·"I cannot see that any legal principle was violated, or any unsound doctrine advanced. The charter provides that the jury shall assess the value of the land and materials taken by the company and the damages. The damages here contemplated are not damages to the land actually occupied, or covered by the road, but such damages as the owner may sustain in his other and adjacent lands, not occupied by the road. His buildings may be reduced in value by the contiguity of the road, and the use of engines upon it. His lands and buildings, before adapted and used for particular pur-

poses, may from the same cause become utterly unfitted for such purposes. The owner may be incommoded by high embankments, or deep excavations on the line of the road, his buildings subjected to greater hazard from fire, his household and stock to injury or destruction, unless guarded with more than ordinary care. It requires no special experience or sagacity to perceive that such are the usual and natural effects of railroads upon adjoining lands, and which necessarily deteriorate not only their marketable value but their intrinsic value."

Another thing urged with great force is that the oath to witnesses was administered by a justice of the peace. In what manner the merits of this controversy have been effected thereby does not appear from argument of appellant. True, the commissioners met at the office of Justice Hawkins, but this was upon suggestion of appellant's counsel, that it was a convenient and accessible place, and when the hearing came, the commissioners considering that there was no apparent authority given them to administer an oath, called upon this justice to swear witnesses. That one of the commissioners might have done this by virtue of their appointment as a common law doctrine, we do not doubt, but that it made any particular difference, or had any especial bearing upon the merits of the controversy, we deny.

The case in 8th Wis., 485, has no possible bearing upon this point, for there the question was not as to the authority of the officer who swore the jury, but as to the necessity for the swearing of the jury at all, and the case in 1 Johns., 520, is fully as far from the point, as will be found upon examination. This justice of the peace under the law is authorized to administer oaths anywhere within this county. These commissioners were required to be sworn before proceeding with their duties, not by any particular officer, however, and the oath to them might have been administered as well by this justice as by any other official. And if this had occurred no doubt counsel would have called this whole proceeding a trial in justice court. To say that a justice can not administer an oath except in trials had before him is absurd. Administrators are required to take an oath. Referees, judges of election and highway viewers also must do the same before enter-

ing upon their duties, and in each and every case a justice of the peace may as well, under the law, administer the oath as any other official. So in the proceedings under consideration the oath can as well be taken before a justice of the peace as before the commissioners—the law not providing specifically on that point. But if it be said that it is extra judicial, then all we have from the witnesses is *statements* and not *testimony,* and at once the whole fabric of appellants' argument based upon the " sworn testimony " vanishes like a wreath of mist.


KIDDER, J.—This is a special proceeding for the condemnation of land for railway purposes, pursuant to section 452 of the Civil Code of this Territory.

This section provides for the institution of proceedings upon petition of either the owner of the property or the company after due notice to the other party. Upon such petition the District Judge appoints three disinterested freeholders of the county or subdivision—who must not be interested in a like question—as commissioners to assess the damages. The commissioners must be duly sworn to perform their duties impartially and justly ; they shall " inspect " the " real property " " and consider the injury which such owner may sustain by reason of such railroad ; and they shall assess the damages which such owner will sustain by such appropriation of his land ; and they shall forthwith make report thereof in writing to the clerk of the said court," etc. " The report of the commissioners may be reviewed by the District Court, on written exceptions filed by either party, in the clerk's office, within sixty days after filing such report; and the court shall take (make) such order therein as right and justice may require, either by confirming, modifying, or rejecting the same, or by ordering a new appraisement, on good cause shown." And this section further provides, that either party may appeal from the decision of the District Court to the Supreme Court.

The Statute above quoted is quite anomalous. We can derive but little light for this case from the decisions of the courts of the different States. Nearly every Statute which we have examined,

providing for an assessment of damages by commissioners, provides, in express language, for the hearing of testimony of witnesses before them. We do not find the precise terms of our railroad law extant in any of the states or territories. It appears to have been copied from an early statute of Nebraska—while it was a territory—upon which no decisions appear in the reports. The authorities cited by counsel, as applicable to this case, are, therefore, not strictly analogous.

It is proper for me to state here that since the decision of this case in the court below, the Legislative Assembly of our Territory has amended this section so that "the amount of damages shall be assessed by a jury, and the trial shall be conducted and the judgment entered on the verdict in the same manner as civil actions in the District Court." (*Vide*, laws of Dakota, 1881, page 32.)

This amendment obviates the importance of elaborating this opinion to any considerable extent, except only as to other exceptions to the report of commissioners aside from the "amount of. damages."

The record herein shows, that proceedings were had and one report was set aside before we come to the report under consideration, but it is only necessary for us to consider what is now before us. The exceptions relate only to the action of the commissioners in making their assessment of damages, which the appellant reduces to four grounds :

1. The hearing of sworn testimony of witnesses.

2. The allowing the oath to be administered to the witnesses by a justice of the peace.

3. The admission of the opinion of witnesses as to the amount of damages; and,

4. The admission of hearsay evidence as to what the company paid for other lands.

These exceptions were overruled by the court below, and the report of the commissioners confirmed.

In view of the opinion of the court-in relation to the errors assigned—each being governed by the same rule—they need not be separately considered, but being of like import, and all in rela-

tion to the *action* of the commissioners in making the assessment, will be considered together.

It was not claimed on the argument th ,t this law of eminent domain, contained in section 452, is unconstitutional or in conflict with the Organic Act of our Territory, but the learned counsel for the appellant labored to show that the commissioners on the hearing of the case before them acted without the authority of law, and that their proceedings were " calculated to destroy the foundations as well as the usages of all legal inquiry."

It must not be lost sight of that the Statute in this case does not provide for the hearing of evidence before the commissioners; if it did, then the authorities cited by the counsel for appellant would be more pertinent to the matter in hand.

In New York the Statute provides that the commissioners shall view the premises and "hear the proofs and allegations of the parties," and reduce the testimony taken by them to writing. (Laws, 1850, Chap. 140, Sec. 16, as amended laws, 1864, Sec. 4.)

The California statute is substantially the same. " The said commissioners shall proceed to view the several tracts of land as ordered by the court or Judge, and shall hear the allegations and proofs of the parties, and shall ascertain and assess the compensation for the land sought to be appropriated." (Practice Act, 855 ; *Railroad Company v. Pearson*, 35 Cal., 247.)

And such are the Statutes of nearly every State that we have been called upon to examine, or that we have examined without reference thereto. Hence the decisions of courts in such States in pursuance thereof.

Are sections 452 and 453 relative to the assessment of damages in harmony and accord with the settled principles of law ? Upon the application of either party, and after ten days notice to the opposite party, the Judge shall appoint the commissioners. Both parties have due notice of the time and place, when and where the Judge will act in this regard, and can appear before him and take action therein, if they desire to do so. And upon the refusal of the owner * * of lands to grant the right of way, the corporation, by giving ten days notice thereof, may have the damages assessed, etc. Now it seems to us that the parties have ample

opportunity to be heard, and to have their "*day in court*"—not only as to the time of the appointment of the commissioners, but as to the time when the damages are to be assessed.   These notices imply that the land owner may be heard; that he may assert his rights; give evidence and furnish information.   We see nothing that curtails his privileges; the procedure in all respects is fair, open and notorious; and although the mode of procedure is not so full and specific as it might be, yet it is sufficiently ample to meet out strict justice to the parties.   Nor does the Statute exclude any essential requirement that would render it unconstitutional, and, therefore, we regard it in harmony and accord with the settled principles of law.

In the report before us the commissioners say :   " We went upon the premises and carefully inspected the same, and considered the injury which said owner would sustain by reason of said railroad, and the appropriation of said strip of land by said company for a right of way across said premises, and after hearing the respective parties upon the subject of damages, did ascertain the value of the strip so taken," etc.

This exhibits fairness on the part of the commissioners, and, indeed, not the least partiality herein has been imparted to them by either party.

" Statutes of this Territory are to be liberally construed with a view to effect its objects and to promote justice."   (Code of Civil Procedure, section 3.)   " A thing which is within the object, spirit and meaning of a Statute is as much within the Statute as if it were within the letter."   (Dwarris, 176.)   Again on page 144, No. 6 of the American rules :   " Statutes must be interpreted according to the intent and meaning and not always according to the letter." And again, No. 4 :   " It is the duty of courts to so construe Statutes as to meet the mischief and advance the remedy, and not to violate fundamental principles."

In the Spring Garden Street case, 4 Rawle, 192, the Supreme Court of Pennsylvania, says :   " An inquest of this sort is restrained to no particular species of evidence, and may resort to any source of information which the members of it may think proper."

In the matter of William and Anthony streets, 19 Wend., 694,

the Court says: "The very first thing required of them" (commissioners) "by law after being sworn, is to view the premises affected by the improvement. They are thus to acquire information which there are no means of bringing before the court." The court further says in this case: "I entertain no doubt the commissioners may take the opinion of others in whose integrity and judgment they have confidence without swearing them as witnesses. They may converse with all classes of men concerning the business in hand, and collect information in all the ways which a prudent man usually takes to satisfy his own mind concerning matters of like kind. The commissioners must exercise their own judgment at last, but they may first seek light from other minds, the better to enable themselves to arrive at a just conclusion. Such is the law laid down in *W. P. R. R. v. Reed*, 35 Cal.; also in 6 How., 496; Mill Em. Domain, 253; 32 Cal., 250; 8 Nev., 165; and in many others too numerous to mention.

Now in relation to the construction of our Statute as to the duties of commissioners in assessing damages in a case like this, we have come to this conclusion: The commissioners may upon their own motion take testimony relative to the subjects they may be called upon to determine; and they ought to hear evidence relating thereto, when requested and offered by the parties or either of them, appointing a reasonable time and place therefor; that at the same time, notwithstanding their duty to hear evidence thus offered, they are not to be held in their action to a strict compliance with the technical rules as to the admissibility of such evidence; to do so would almost always inevitably tend to defeat the object and aims of the Statute, or greatly prolong the proceedings, for they are not usually lawyers and not presumed to be possessed of familiarity with the rules of evidence governing courts of justice; and their report is not to be rejected or set aside merely because they have in receiving such testimony violated such rules, unless it manifestly appears, or shall be made clearly to appear to the court that the party complaining has been unjustly prejudiced thereby. They may also seek information from all classes of men, and collect it in all the ways that a prudent man usually takes to satisfy his own mind concerning matters of

like kind, and then they are to consider the injury and assess the damages.

If, however, " good cause " exists, which does not appear upon the face of the report, " such as fraud or misconduct on the part of the commissioners or others, by reason of which a fair, full and honest investigation has not been had," such cause may be shown in the usual manner prescribed by the courts in such cases, or by such rules as the court may adopt for the occasion.

In the trial of an action at law, and before a jury, no one principle is more clearly settled than that errors in admitting evidence will be disregarded when the result is shown not to have been affected thereby. And it should appear, in order to set a report aside because irrelevant evidence was admitted that such evidence was the foundation of the award.

Therefore, in this case, as the appellant relied altogether upon the admission of evidence by the commissioners in violation of some of the technical rules of evidence, and as nothing appeared which would indicate that the appellant was unjustly prejudiced thereby; but it really affirmatively appeared that he could not have been injured by it, for the award was much less than either witness placed the damages, we cannot say that the District Court erred in not setting aside and rejecting the report.

We also hold that a justice of the peace may properly administer the oath to the parties called before the commissioners as witnesses, and that no error was committed in this case in that particular.

The judgment of the District Court is, therefore,

AFFIRMED.*

HUDSON, J., dissenting.

SHANNON, C. J.—While I concur in the judgment in this case, yet I must dissent from that portion of the opinion which intimates that the commissioners " *may also seek information from all classes of men and collect it in all the ways a prudent man usually takes;*" etc.

---

* NOTE.—The court below decided a question of interest and costs adversely to the respondent, but as the respondent did not appeal from the decision and bring the matter up, this court cannot consider it.

This is too broad, and means that they may go about and pick up opinions of men not under oath, in the absence even of the parties. The information required as to the damages, should be obtained from witnesses under oath, who should be examined in the presence of the parties, thus giving a fair hearing.